# EXHIBIT B
## to Notice of Removal

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| James R. Parrinello, SBN 063415<br>Nielsen Merksamer Parrinello Gross & Leoni, LLP<br>2350 Kerner Blvd., Suite 250<br>San Rafael, CA 94901 | **ENDORSED**<br>**F I L E D**<br>Superior Court of California<br>County of San Francisco<br><br>MAR 05 2015<br><br>CLERK OF THE COURT<br>BY: ____MARY A. MORAN____<br>Deputy Clerk |

TELEPHONE NO.: (415) 389-6800   FAX NO.: (415) 388-6874
ATTORNEY FOR *(Name)*: Plaintiffs SF Apartment Assn, et al.

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME:

CASE NAME:
San Francisco Apartment Association v. City & County of San Francisco

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [✓] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | CPF-15-514174<br><br>JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation<br>(Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | [ ] Antitrust/Trade regulation (03) |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Construction defect (10) |
| **Other PI/PD/WD (Personal Injury/Property<br>Damage/Wrongful Death) Tort** | [ ] Other collections (09) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Insurance coverage (18) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | [ ] Other contract (37) | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | **Real Property** | [ ] Insurance coverage claims arising from the<br>above listed provisionally complex case<br>types (41) |
| [ ] Other PI/PD/WD (23) | [ ] Eminent domain/Inverse<br>condemnation (14) | |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | **Enforcement of Judgment** |
| [ ] Business tort/unfair business practice (07) | [ ] Other real property (26) | [ ] Enforcement of judgment (20) |
| [ ] Civil rights (08) | **Unlawful Detainer** | **Miscellaneous Civil Complaint** |
| [ ] Defamation (13) | [ ] Commercial (31) | [ ] RICO (27) |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] Other complaint *(not specified above)* (42) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | **Miscellaneous Civil Petition** |
| [ ] Professional negligence (25) | **Judicial Review** | [ ] Partnership and corporate governance (21) |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Other petition *(not specified above)* (43) |
| **Employment** | [ ] Petition re: arbitration award (11) | |
| [ ] Wrongful termination (36) | [✓] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [ ] is [✓] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a.[ ] monetary   b.[✓] nonmonetary; declaratory or injunctive relief   c.[ ] punitive
4. Number of causes of action *(specify)*: three (3)
5. This case [ ] is [✓] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: March 5, 2015

JAMES R. PARRINELLO
(TYPE OR PRINT NAME)                                  ▶        *(signature)*
                                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |

**SUM-100**

# SUMMONS
# (CITATION JUDICIAL)

|  | FOR COURT USE ONLY<br>(SOLO PARA USO DE LA CORTE) |
|---|---|

**NOTICE TO RESPONDENT/DEFENDANT:**
*(AVISO AL DEMANDADO):*

CITY AND COUNTY OF SAN FRANCISCO, AND DOES 1-20

**YOU ARE BEING SUED BY PETITIONERS/PLAINTIFFS:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

SAN FRANCISCO APARTMENT ASSOCIATION; COALITION FOR BETTER
HOUSING; SMALL PROPERTY OWNERS OF SAN FRANCISCO INSTITUTE;
SAN FRANCISCO ASSOCIATION OF REALTORS; and NORMAN T. LARSON

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* San Francisco Superior Court<br><br>400 McAllister Street<br>San Francisco, CA 94102 | CASE NUMBER:<br>*(Número del Caso):*<br>CPF·15-514174 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
James R. Parrinello, 2350 Kerner Blvd., Ste. 250, San Rafael, CA 94901 (415) 389-6800

| DATE: March 5, 2015 MAR 05 2015<br>*(Fecha)* | CLERK OF THE COURT Clerk, by<br>*(Secretario)* **MARY ANN MORAN** | , Deputy<br>*(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* *City and County of San Francisco*

under: ☐ CCP 416.10 (corporation)   ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
☑ other *(specify):* 416.50 (public entity)

4. ☒ by personal delivery on *(date):* 3/5/2015

Page 1 of 1

Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov

COPY

1  NIELSEN MERKSAMER PARRINELLO
      GROSS & LEONI, LLP
2  JAMES R. PARRINELLO (SBN 063415)
   CHRISTOPHER E. SKINNELL (SBN 227093)
3  JAMES W. CARSON (SBN 287001)
   2350 Kerner Blvd., Suite 250
4  San Rafael, CA 94901
   TELEPHONE: (415) 389-6800
5  FAX          (415) 388-6874

6  Email: jparrinello@nmgovlaw.com
   Email: cskinnell@nmgovlaw.com
7  Email: jcarson@nmgovlaw.com

8  *Attorneys for Petitioners/Plaintiffs*

9

ENDORSED
F I L E D
Superior Court of California
County of San Francisco

MAR 05 2015

CLERK OF THE COURT
BY: _____ MARY A. MORAN
                    Deputy Clerk

10              SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                         COUNTY OF SAN FRANCISCO

12                         (UNLIMITED JURISDICTION)

| | |
|---|---|
| 13  SAN FRANCISCO APARTMENT ) | |
| 14  ASSOCIATION; COALITION FOR ) | CPF·15-514174 |
|     BETTER HOUSING; SMALL ) | |
| 15  PROPERTY OWNERS OF SAN ) | Case No.: |
|     FRANCISCO INSTITUTE; SAN ) | |
| 16  FRANCISCO ASSOCIATION OF ) | VERIFIED PETITION FOR WRIT OF |
| 17  REALTORS; and NORMAN T. ) | MANDATE AND COMPLAINT FOR |
|     LARSON, ) | INJUNCTIVE AND DECLARATORY |
| 18  ) | RELIEF |
| 19                Petitioners, ) | |
| 20       vs. ) | |
| 21  ) | |
|     CITY AND COUNTY OF SAN ) | |
| 22  FRANCISCO, and DOES 1-20, ) | |
| 23  ) | |
|                  Respondents. ) | |
| 24  _____ ) | |

25

26

27

28

1    Petitioners and Plaintiffs SAN FRANCISCO APARTMENT ASSOCIATION

2   (hereinafter "SFAA"), COALITION FOR BETTER HOUSING (hereinafter "CBH"),

3   SMALL PROPERTY OWNERS OF SAN FRANCISCO INSTITUTE (hereinafter

4   "SPOSFI"), SAN FRANCISCO ASSOCIATION OF REALTORS (hereinafter "SFAR"),

5   and NORMAN T. LARSON (hereinafter "LARSON") (hereinafter collectively

6   "Plaintiffs"), petition this Court for a writ of mandate and injunctive and declaratory

7   relief directed against Defendant CITY AND COUNTY OF SAN FRANCISCO

8   (hereinafter "City" or "Defendant"). Plaintiffs seek an order declaring a recently-

9   enacted ordinance regarding residential rental buyout agreements to be illegal and

10   unenforceable in whole or in part.  The Ordinance, No. 225-14, amends section

11   37.9E of the City's Administrative Code and section 1396 of the Subdivision Code

12   ("the Ordinance").  A true and correct copy of the Ordinance is attached hereto as

13   Exhibit A.

14                        **THE ORDINANCE**

15      1.      Under San Francisco law, landlords are prohibited from unilaterally

16   terminating a residential lease unless certain, specified "just causes" for eviction are

17   present.  However, until the Ordinance was enacted, landlords and tenants retained

18   the ability to negotiate with each other to enter into purely voluntary and mutually

19   beneficial contractual agreements by which a tenant vacates a unit in exchange for

20   valuable consideration.  The consideration can range from an owner forgiving back

21   rent due or claims for damage to a unit, or paying a tenant thousands or tens of

22   thousands of dollars, in exchange for possession of the unit. Such voluntary

23   agreements benefit both owner and tenant, which is why they enter into them in the

24   first place.  For example, tenants who find they must move due to a new job in

25   another city, have a need for larger living space for a growing family, or a desire to

26   live near an ill friend or relative, can negotiate for compensation to ease their

27   financial burdens, and in exchange the owner regains control over the unit and the

28   possibility of renting it at a market rate.  The Ordinance, however, seeks to restrict

1

VERIFIED PETITION FOR WRIT OF MANDATE AND COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF
CASE NO.

owners and tenants from entering even these voluntary arrangements, even though both owners and tenants benefit from buyout agreements, by (1) making the negotiation process prohibitively burdensome for landlords and (2) further penalizing those landlords who do tolerate the burdensome process, by restricting their property rights even when they have fully complied with the law.

2. The Ordinance is merely the latest in a series of laws passed during the last year that punish residential rental property owners in the City, scapegoating owners for the City's housing crisis when in fact that crisis is the result of a combination of a rising economy, which has created tens of thousands of new jobs in the City, and the City's own anti-development policies. With little political power in a city where 65% of the residential units are tenant-occupied (according to the most recent U.S. Census), owners have little alternative but to seek relief in the courts. Just in the past several months, U.S. District Court Judge Breyer and Superior Court Judges Robertson and Quidachay have invalidated recently-enacted, punitive anti-owner ordinances for statutory and constitutional violations. *Levin v. City and County of San Francisco*, 2014 U.S. Dist. LEXIS 149646 (N.D. Cal. Oct. 21, 2014); *San Francisco Apartment Association, et al. v. City and County of San Francisco*, No. CPF-14-51342 (Super. Ct. S.F. City and County, 2014); *Jacoby v. City and County of San Francisco*, No. CGC-14-540709 (Super. Ct. S.F. City and County, 2014).

3. The Ordinance purports to regulate and restrict the ability of owners and tenants to enter into voluntary agreements or settle disputes by providing for the tenant to vacate in exchange for money or other valuable consideration. It does so in the following ways:

a. The Ordinance imposes a form of prior restraint on landlords' (and tenants') free speech, by flatly prohibiting "any discussion or bargaining, whether oral or written, between a landlord and tenant regarding the possibility of entering into a Buyout Agreement"

2

unless and until the owner *first* provides the tenant—and the tenant signs—a Rent Board-developed form. That form is to include various forms of *compelled* speech, among other things: a statement that the tenant has the right not to enter into negotiations or an agreement; a statement that that the tenant may consult with an attorney; a statement that that the tenant may visit the Rent Board to obtain information about buyout agreements in the tenant's neighborhood; a list of tenants' rights organizations and their contact information; and if the owner is an entity, the names of all people who will conduct negotiations for the owner and the names of all people with decision making authority for the owner; and a space for the tenant to sign and date the form. The owner must retain each signed disclosure form for five years. (Section 37.9E(c) & (d).)

b.   Further, the Ordinance prohibits owners and tenants from even discussing a buyout until the owner has *first* provided the Rent Board the owner's name, business address, business email address, business telephone number, the name of each tenant the owner intends to discuss buyouts with, the address of the tenant's rental unit, and a sworn statement that the owner provided each tenant the disclosure required by subsection (d) prior to commencing negotiations. The Ordinance then subjects the two sides of a would-be bilateral agreement—landlords and tenants—to arbitrarily disparate treatment, by requiring the Rent Board to make all of this information regarding the landlord publicly available, but to redact all information regarding the tenant's identity. (Section 37.9E(e).)

c.   The Ordinance also requires all buyout agreements to be in writing and contain numerous specified statements that must be included,

3

in 14-point type, including that the tenant can unilaterally cancel the agreement within 45 days, that the tenant has the right not to enter into the buyout agreement, that the tenant can consult with an attorney or tenant's rights organization before signing, that an owner cannot convert the building into a condominium where the buyout agreement is with a senior, disabled or seriously ill tenant, or where two tenants have vacated under buyout agreements.  Further, the agreement must ask each tenant if they believe they are senior, disabled or seriously ill and provide space for them to answer yes or no.  The Ordinance further provides that a buyout agreement that does not satisfy all of these requirements, contain the signature and specified initials and answers of the tenant, is not effective and may be rescinded by the tenant at any time.  (Section 37.9E(f).)  The landlord has no equivalent right of rescission.

d.    Even if all of the foregoing requirements are met, the Ordinance gives tenants (but not owners) the right to unilaterally rescind, without cause, for up to 45 days after a buyout agreement is signed. (Section 37.9E(g).)

e.    The Ordinance requires landlords to file each signed buyout agreement with the Rent Board no sooner than the 46th day after signing and no later than the 59th day.  It directs the Rent Board to create a searchable database with these filings; the identifying information regarding the owner is to be publicly available, but the tenant's identity is required to be redacted.  (Section 37.9E (h) & (i).)

f.    The Ordinance gives tenants and tenant's rights associations the right to file damage and penalty lawsuits for an owner's purported

4

failure to comply, and mandates the court to award them attorneys' fees if they prevail. (Section 37.9E(k).)

g.  And finally, the Ordinance penalizes landlords who enter into voluntary, entirely legal agreements with their tenants, by prohibiting buildings where buyout agreements have occurred in the preceding ten years from eligibility for the City's condominium conversion lottery. *This is true even where the landlord has fully complied with all of the various notice, registration, and filing obligations discussed above.* (Subdivision Code section 1396(e)(4).)

4.  In all the foregoing ways, the Ordinance, on its face, discourages owners and tenants from entering into voluntary buyout agreements, and punishes owners (but not tenants) who choose to enter into such agreements.

**THE PARTIES**

5.  Plaintiff SFAA, founded in 1917, is a full-service, non-profit trade association of persons and entities who own residential rental properties in San Francisco. SFAA currently has more than 2,800 active members, who own more than 65,000 residential rental units in the city. SFAA's membership includes hundreds of "mom & pop" owners who own 2-4 unit buildings and live in one of the units. SFAA is dedicated to educating, advocating for, and supporting the rental housing community and preserving the property rights of all residential rental property providers in San Francisco. SFAA fields hundreds of calls each month from property owners with questions about their rights and duties under San Francisco and state laws. Many of these callers are referred to attorneys associated with SFAA. SFAA and its members are adversely and directly affected by the Ordinance. SFAA includes members who have entered into buyout agreements and who would like to do so in the future. Individual members of SFAA, by virtue of their property ownership, are subject to the Ordinance and could challenge the Ordinance in their own right. The ability of residential property owners to exercise

5

their rights free from the constraints of the Ordinance is germane to SFAA's organizational purpose, and this challenge does not require the participation of individual members of SFAA.  The Ordinance harms SFAA and its members by adversely affecting their ability to manage and otherwise control their real property, to communicate with and contract with their tenants free of governmental interference, and to exercise their constitutional and statutory rights.

6.     Plaintiff CBH is a non-profit trade organization representing the owners of over 20,000 residential rental units in San Francisco.  Organized in 1979, CBH works to bring a healthier real estate climate to the rental housing industry in San Francisco and to advocate for, support, and protect the property and legal rights of CBH members and other residential rental property owners in the city.  As residential rental property owners, all CBH members are subject to the Ordinance and are directly and adversely affected by it.  CBH includes members who have entered into buyout agreements and who would like to do so in the future.  The Ordinance harms CBH and its members by adversely affecting their ability to manage and otherwise control their real property, to communicate with and contract with their tenants free of governmental interference, and to exercise their constitutional and statutory rights.  Individual members of CBH, by virtue of their property ownership, are subject to the Ordinance and could challenge the Ordinance in their own right.  The ability of residential property owners to exercise their rights free from the constraints of the Ordinance is germane to CBH's organizational purpose, and this challenge does not require the participation of individual members of CBH.

7.     Plaintiff SPOSFI is a California nonprofit corporation and organization of small property owners that advocates for home ownership and the rights of residential rental property owners in San Francisco.  SPOSFI includes members who have entered into buyout agreements and who would like to do so in the future.  SPOSFI's members range from young families to the elderly on fixed incomes, and

1   its membership cuts across all racial, ethnic, and socio-economic strata.  Thus,

2   SPOSFI's members are, or will be, subject to the challenged ordinance.  SPOSFI is

3   also involved in education, outreach and research.  Through education, it helps

4   owners better understand their rights and learn how to deal with local government;

5   through outreach to community groups and to the public, it demonstrates how

6   restrictive San Francisco regulations harm both tenants and landlords, and through

7   research projects, it aims to separate hyperbole from fact on the effect of rent

8   control on housing stock.  Through legal advocacy, SPOSFI seeks to protect the

9   rights of small property owners against unfair and burdensome regulations.  The

10  ability of residential property owners to exercise their rights free from the

11  constraints of the Ordinance is germane to SPOSFI's organizational purpose, and

12  this challenge does not require the participation of individual members of SPOFSI.

13  The Ordinance harms SPOSFI and its members by adversely affecting their ability

14  to manage and otherwise control their real property, to communicate with and

15  contract with their tenants free of governmental interference, and to exercise their

16  constitutional and statutory rights.

17      8.   Plaintiff SFAR is the official association of licensed real estate brokers

18  and real estate agents in San Francisco.  It consists of over 4,200 agent and broker

19  members who are dependent for their livelihood upon the sale and management of

20  real property in San Francisco.  The mission of SFAR is to provide programs,

21  products, and services to its member brokers and agents that will assist them in

22  increasing productivity and realizing success, and to advocate for and help to create

23  a regulatory and legal environment conducive to the practice of real estate

24  brokerage.  Through legal advocacy, SFAR seeks to protect the rights of small

25  property owners, including residential rental property owners, against unfair and

26  burdensome regulations.  Plaintiff SFAR's individual members are adversely and

27  directly affected by the Ordinance in that its provisions adversely affect their ability

28  to market, sell and manage real property and thereby to make a living, and to

communicate with and contract with tenants in buildings they own or manage free of governmental interference and to exercise their constitutional and statutory rights. The ability of its member brokers and agents as well as residential rental property owners to exercise their rights free from the constraints of the Ordinance is germane to SFAR's organizational purpose, SFAR's individual members could have challenged the Ordinance in their own right, and this challenge does not require the participation of individual members of SFAR.

9. Plaintiff LARSON is an owner of residential real property in San Francisco and is subject to the Ordinance. LARSON would like to enter into buyout agreements in the future free from the restrictions of the Ordinance.

10. Defendant CITY AND COUNTY OF SAN FRANCISCO is now, and at all times mentioned in this complaint has been, a governmental entity organized and existing under and by virtue of the Constitution and laws of the State of California. Defendant CITY is a municipal corporation whose responsibility it is to enforce and defend the Ordinance.

11. Defendant Does 1-20 are sued herein under fictitious names because their true names and capacities are unknown to Plaintiffs. When their true names and capacities are ascertained, Plaintiffs will amend this complaint to assert their true names. Plaintiffs are informed and believe, and on that basis allege, that each of the fictitiously named Defendants is responsible in some manner for the occurrences, harms, and violations of law alleged herein.

## FIRST CAUSE OF ACTION

## (Writ of Mandate or Other Appropriate Relief)

12. Plaintiffs hereby reallege paragraphs 1-11 above as fully and completely as if set forth again herein.

13. The Ordinance violates the legal and constitutional rights of Plaintiffs, Plaintiff associations' members, and other owners of residential rental property in the City and County of San Francisco.

8

14.    The Ordinance violates Plaintiffs' free speech rights under the United States and California Constitutions and 42 U.S.C. § 1983. It forbids owners and tenants to speak about possible buyouts, imposes a prior restraint on such speech, and compels owners and their agents and managers to engage in compelled speech, speaking what the government (Rent Board) dictates as a condition of exercising their free speech rights. Further, even if an owner accedes to the government mandate, and complies with the Rent Board rules, an owner is nonetheless prohibited from speaking to a tenant about a buyout until the tenant consents by signing the disclosure form.

15.    The Ordinance also prohibits condominium conversion applications or approvals for ten years in a building where an owner has entered into a voluntary, wholly legal buyout agreement with a disabled or seriously ill tenant, or where two or more tenants have entered into buyout agreements in the previous ten years. This provision impairs the right of both owners and tenants to enter into voluntary settlement of disputes, and punishes owners for entering into voluntary, mutually-beneficial, wholly legal contracts with their tenants. It thus illegally impairs and interferes with rights inherent in their rental agreements to settle disputes in good faith.

16.    The Ordinance unfairly and irrationally treats owners differently than tenants, in violation of the state and federal constitutions' guarantees of equal protection and due process and 42 U.S.C. § 1983. It prohibits an owner from even speaking about a buyout without the tenant's written consent. It punishes an owner who has entered into a buyout agreement by barring condominium conversions in the building for ten years, with no similar penalty on the tenant. It grants a tenant the power to unilaterally rescind a buyout agreement for 45 days after it is entered into, but grants an owner no similar power. It requires the owner to file the buyout agreement with the Rent Board and to disclose the identity of all persons with decision making authority for the owner, and commands that this information be

9

1   published on the Rent Board's web site, but directs that any tenant information be

2   redacted and not published.  And it makes the owner bear the burden of any

3   departure from the Ordinance's elaborate rules, subjecting the owner to potential

4   damages, penalties, and attorneys' fee awards.

5        17.   The Ordinance also violates owners' fundamental privacy rights under

6   Article I, § 1, of the California Constitution, by making personal information about

7   the landlord and his/her/its business activities publicly-available, without any

8   legitimate purpose being served thereby.

9        18.   Plaintiffs have a beneficial interest in ensuring that the provisions of

10   the Ordinance are not enforced so as to deprive them, their members and other

11   agents, owners and managers of rental property of their constitutional, legal, and

12   other rights.

13        19.   Plaintiffs have no speedy or adequate remedy at law.

14        20.   This action is ripe for adjudication and is timely filed.

## SECOND CAUSE OF ACTION

### (Injunctive Relief)

17        21.   Plaintiffs hereby reallege paragraphs 1-20 above as fully and

18   completely as if set forth again herein.

19        22.   The Ordinance, if enforced by Defendant, will cause Plaintiffs severe

20   injury in that Plaintiffs and their members will be deprived of their statutory,

21   constitutional and property rights as set forth above.

22        23.   Plaintiffs do not have a plain, speedy, or adequate remedy in the

23   ordinary course of law, other than the relief requested herein.  Due to the foregoing,

24   injunctive relief is a necessary and proper remedy.

## THIRD CAUSE OF ACTION

### (Declaratory Relief)

27        24.   Plaintiffs hereby reallege paragraphs 1-23 above as fully and completely

28   as if set forth again herein.

25. An actual controversy has arisen and now exists between Plaintiffs and Defendant as to the validity and enforceability of the Ordinance. Plaintiffs contend that said provisions are void and unenforceable. Defendant contends that said provisions are valid and enforceable.

26. Plaintiffs desire a judicial determination of the validity of the Ordinance and a determination as to whether its provisions are enforceable.

27. A judicial declaration is necessary and appropriate at this time in order for Plaintiffs to ascertain their rights and duties under the Ordinance.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for Judgment as follows:

1. Grant of judgment and issuance of a writ of mandate or other appropriate relief directing and commanding that Defendant and others acting pursuant to its authority or control refrain from enforcing the Ordinance or provisions thereof;

2. A declaration that the Ordinance is void and unenforceable in whole or in part;

3. An injunction, temporary and permanent, prohibiting Defendant from enforcing the Ordinance in whole or in part;

4. Plaintiffs be awarded costs of this action and attorneys' fees pursuant to Code of Civil Procedure section 1021.5, 42 U.S.C. § 1988, or other appropriate statute(s); and

5. This Court grant such other relief as may be just and proper.

Respectfully submitted,

Dated: March 5, 2015

NIELSEN MERKSAMER
PARRINELLO GROSS & LEONI, LLP

By: _____
James R. Parrinello
*Attorneys for Plaintiffs*

11

## **VERIFICATION**

I, Janan New, declare as follows:

I am the Executive Director of the San Francisco Apartment Association, Plaintiff in this action. I have read the foregoing Verified Petition for Writ of Mandate and Complaint for Injunctive and Declaratory Relief and know its contents. The same is true of my own knowledge, except as to those matters which are therein stated on information and belief, and as to those matters I believe it to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 3rd day of March, 2015, at San Francisco, California.

_____
Janan New

# EXHIBIT A

AMENDED IN BOARD
10/21/14

FILE NO. 140874                    ORDINANCE NO. 225-14

[Administrative, Subdivision Codes – Tenant Buyout Agreements]

Ordinance amending the Administrative Code 1) to require landlords to provide tenants with a disclosure of the tenants' rights before the landlord commences buyout negotiations; 2) to require landlords to file a form with the Rent Board indicating the address of the unit that may become the subject of buyout negotiations; 3) to require all buyout agreements to be in writing and to include certain statements about the tenant's rights; 4) to allow tenants to rescind buyout agreements for up to 45 days after the agreements are fully executed; 5) to require landlords to file a copy of buyout agreements with the Rent Board ~~and to pay a fee to the Rent Board~~; 6) to require the Rent Board to create a publically available, searchable database of buyout agreements; 7) to require the Rent Board to provide an annual report to the Board of Supervisors regarding tenant buyouts; 8) to authorize tenants to bring civil actions for actual damages and civil penalties against landlords who fail to provide the required disclosures about the tenants' rights; and 9) to authorize certain non-profits to bring civil actions for a landlord's failure to file a buyout agreement with the Rent Board; and amending the Subdivision Code to prohibit buildings from entering the condominium conversion lottery if the owners of the building have entered certain tenant buyout agreements.

NOTE:    Unchanged Code text and uncodified text are in plain Arial font.
         **Additions to Codes** are in _single-underline italics Times New Roman font_.
         **Deletions to Codes** are in ~~strikethrough italics Times New Roman font~~.
         **Board amendment additions** are in <u><u>double-underlined Arial font</u></u>.
         **Board amendment deletions** are in ~~strikethrough Arial font~~.
         **Asterisks (*   *   *)** indicate the omission of unchanged Code subsections or parts of tables.

Supervisors Campos; Avalos, Kim, and Mar
BOARD OF SUPERVISORS


EXHIBIT
A

1    Be it ordained by the People of the City and County of San Francisco:

2

3    Section 1.  The Administrative Code is hereby amended by adding Section 37.9E, to

4 read as follows:

5    *SEC. 37.9E.  TENANT BUYOUT AGREEMENTS.*

6    *(a)  Findings and Purpose.  San Francisco is in the midst of a housing crisis.  As the disparity*

7 *between rent-controlled and market rate rents continues to grow, landlords have greater incentives to*

8 *induce tenants in rent-controlled units to move out.  Similarly, with the real estate market skyrocketing,*

9 *many landlords are selling their property with the knowledge that an unoccupied unit can command a*

10 *significantly higher sale price than an occupied one.*

11    *Instead of evicting tenants, some landlords offer cash buyouts to tenants in exchange for the*

12 *tenants vacating rental units.  These are sometimes called buyout agreements.  Even buyouts worth tens*

13 *of thousands of dollars can be recouped by a landlord retaining ownership and re-renting at market*

14 *rates or selling the unit.  Unlike no-fault evictions, these buyouts are unregulated, and can enable*

15 *landlords to circumvent many of the restrictions that apply when a landlord executes a no-fault*

16 *eviction.  For example, a landlord who executes some types of no-fault evictions must give tenants a*

17 *certain amount of time to move out, provide funds to tenants to cover relocation costs, and allow*

18 *tenants to move back into the unit under specified circumstances.  Two types of these no fault evictions*

19 *– the Ellis Act and owner move-in evictions – contain restrictions on how much rent a landlord can*

20 *charge if the units are re-rented following eviction.   Analogous regulations do not exist for tenant*

21 *buyouts.*

22    *Anecdotal evidence indicates that many buyout negotiations are not conducted at arms-length,*

23 *and landlords sometimes employ high-pressure tactics and intimidation to induce tenants to sign the*

24 *agreements.  Some landlords threaten tenants with eviction if they do not accept the terms of the*

25 *buyout.  The frequency of these buyout offers increased significantly following passage of a San*

1  *Francisco law in 1996 which restricted, and in many cases prohibited, condominium conversions*

2  *following no fault evictions.  By threatening a specific no fault eviction and then convincing a tenant to*

3  *vacate rather than receiving the eviction notice, a landlord will avoid restrictions on condominium*

4  *conversion as well as restrictions on renovations, mergers, or demolitions.*

5  *These tactics sometimes result in tenants entering into buyout agreements without a full*

6  *understanding of their rights and without consulting a tenants' rights counselor.  These buyouts vary*

7  *widely in amounts and, in some cases, are even below minimum relocation benefits which are required*

8  *to be paid for all no fault evictions.  Disabled, senior, and catastrophically ill tenants can be*

9  *particularly vulnerable, and can face greater hurdles in securing new housing.*

10  *The main purpose of this Section 37.9E is to increase the fairness of buyout negotiations and*

11  *agreements by requiring landlords to provide tenants with a statement of their rights and allowing*

12  *tenants to rescind a buyout agreement for up to 45 days after signing the agreement, thus reducing the*

13  *likelihood of landlords pressuring tenants into signing buyout agreements without allowing the tenants*

14  *sufficient time to consult with a tenants' rights specialist.  Another goal of this ordinance is to help the*

15  *City collect data about buyout agreements.  The City lacks comprehensive information about the*

16  *number, location, and terms of buyout agreements.  This dearth of information precludes the City from*

17  *understanding the true level of tenant displacement in San Francisco.*

18  *(b)  Applicability of Section.  Notwithstanding Section 37.3 or any other provision in City law,*

19  *this Section 37.9E shall apply to all landlords and tenants of rental units as defined in Section 37.2(r).*

20  *(c)  Definitions.  For purposes of this Section 37.9E, the following definitions shall apply:*

21  *"Buyout Agreement" means an agreement wherein the landlord pays the tenant money or other*

22  *consideration to vacate the rental unit.  An agreement to settle a pending unlawful detainer action shall*

23  *not be a "Buyout Agreement."*

24  *"Buyout Negotiations" means any discussion or bargaining, whether oral or written, between a*

25  *landlord and tenant regarding the possibility of entering into a Buyout Agreement.*

1       *(d)  Disclosure required prior to Buyout Negotiations.  Prior to commencing Buyout*

2    *Negotiations for a rental unit, the landlord shall provide each tenant in that rental unit a written*

3    *disclosure, on a form developed and authorized by the Rent Board, that shall include the following:*

4        *(1)  A statement that the tenant has a right not to enter into a Buyout Agreement or*

5    *Buyout Negotiations;*

6        *(2)  A statement that the tenant may choose to consult with an attorney before entering*

7    *into a Buyout Agreement or Buyout Negotiations;*

8        *(3)  A statement that the tenant may rescind the Buyout Agreement for up to 45 days*

9    *after the Buyout Agreement is fully executed;*

10       *(4)  A statement that the tenant may visit the Rent Board for information about other*

11    *Buyout Agreements in the tenant's neighborhood;*

12       *(5)  A list of tenants' rights organizations and their contact information;*

13       *(6)  A statement that information about tenants' rights is available at the Rent Board's*

14    *office, through its counseling telephone number, and on its website;*

15       *(7)  A statement explaining the legal implications under Section 1396(e)(4) of the*

16    *Subdivision Code for a landlord who enters into one or more Buyout Agreements;*

17       *(8)  If the landlord is an entity, the names of all people within that entity who will be*

18    *conducting the Buyout Negotiations, as well as the names of all people within that entity who will have*

19    *decision-making authority over the terms of the Buyout Agreement;*

20       *(9) Any other information required by the Rent Board consistent with the purposes and*

21    *provisions of this Section 37.9E; and*

22       *(10)  A space for each tenant to sign and write the date the landlord provided the tenant*

23    *with the disclosure.*

24    *The landlord shall retain a copy of each signed disclosure form for five years, along with a*

25    *record of the date the landlord provided the disclosure to each tenant.*

1    *(e) Notification of the Rent Board.  Prior to commencing Buyout Negotiations, the landlord*

2    *shall provide the following information to the Rent Board, on a form developed and authorized by the*

3    *Rent Board:*

4    *(1) The landlord's name, business address, business email address, and business*

5    *telephone number;*

6    *(2) The name of each tenant with whom the landlord intends to enter into Buyout*

7    *Negotiations;*

8    *(3) The address of the rental unit that may be the subject of Buyout Negotiations; and*

9    *(4) A statement signed under penalty of perjury that the landlord provided each tenant*

10   *with the disclosure required by subsection (d) prior to commencing Buyout Negotiations.*

11   *The Rent Board shall make the information included on this form publically available, except*

12   *that the Rent Board shall redact all information regarding the identity of the tenants.*

13   *(f) Requirements for Buyout Agreements.  Every Buyout Agreement shall:*

14   *(1) Be in writing.  The landlord shall give each tenant a copy of the Buyout Agreement*

15   *at the time the tenant executes the Agreement.*

16   *(2) Include the following statement in bold letters in a size equal to at least 14-point type*

17   *in close proximity to the space reserved for the signature of the tenant(s).  "You, the tenant, may cancel*

18   *this agreement at any time before the 45th day after all parties have signed this agreement.  To cancel*

19   *this agreement, mail or deliver a signed and dated notice stating that you, the tenant, are cancelling*

20   *this agreement, or words of similar effect.  The notice shall be sent to: _____ (Name of landlord)*

21   *at _____ (Address of landlord)."  Immediately after this statement, there shall be a line for*

22   *each tenant to affix his or her initials.*

23   *(3) Include the following statements in a size equal to at least 14-point type: "You, the*

24   *tenant, have a right not to enter into a buyout agreement"; "You, the tenant, may choose to consult*

25   *with an attorney and/or a tenants' rights organization before signing this agreement.  You can find a*

1   *list of tenants' rights organizations on the Rent Board's website – www.sfrb.org"; and "The Rent*

2   *Board has created a publically available, searchable database that may include information about*

3   *other buyout agreements in your neighborhood.  You can search this database at the Rent Board's*

4   *office at 25 Van Ness Avenue, Suite 320."  Immediately after each statement, there shall be a line for*

5   *each tenant to affix his or her initials.*

6           *(4) Include the following statements in a size equal to at least 14-point type: "Under*

7   *Section 1396(e)(4) of San Francisco's Subdivision Code, a property owner may not convert a building*

8   *into a condominium where: (A) a senior, disabled, or catastrophically ill tenant has vacated a unit*

9   *under a buyout agreement after October 31, 2014, or (B) two or more tenants who are not senior,*

10  *disabled, or catastrophically ill have vacated units under buyout agreements, if the agreements were*

11  *entered after October 31, 2014 and within the ten years prior to the condominium conversion*

12  *application.  A 'senior' is a person who is 60 years or older and has been residing in the unit for ten*

13  *years or more at the time of Buyout Agreement; a 'disabled' tenant is a person who is disabled under*

14  *the Americans with Disabilities Act (Title 42 United States Code Section 12102) and has been residing*

15  *in the unit for ten years or more at the time of Buyout Agreement; and a 'catastrophically ill' tenant is*

16  *a person who is disabled under the Americans with Disabilities Act (Title 42 United States Code*

17  *Section 12102) and who is suffering from a life threatening illness and has been residing in the unit for*

18  *five years or more at the time of Buyout Agreement.  Do you believe that you are senior, disabled, or*

19  *catastrophically ill as those terms are defined above?  Yes _____  No _____  I don't know _____  I*

20  *prefer not say _____ ."  The question listed in this subsection (f)(4) shall appear in the Buyout*

21  *Agreement once for each tenant who is a party to the Buyout Agreement.  Next to each question shall*

22  *be a line for the tenant to affix his or her initials.*

23      *A Buyout Agreement that does not satisfy all the requirements of this subsection (f) shall not be*

24  *effective and may be rescinded by the tenant at any time.  A Buyout Agreement that does not include the*

25  *initials of each tenant next to each of the statements described in subsections (f)(2) and (f)(3) shall not*

*be effective and may be rescinded by the tenant at any time.  A Buyout Agreement that does not contain*

*an answer from each tenant to the question listed in subsection (f)(4), as well as the initials of each*

*tenant next to his or answer to the question listed in subsection (f)(4), shall not be effective and may be*

*rescinded by the tenant at any time.*

*(g) Rescission of Buyout Agreements.  A tenant shall have the right to rescind a Buyout*

*Agreement for up to and including 45 days after its execution by all parties.  In order to rescind a*

*Buyout Agreement, the tenant must, on or before the 45th day following the execution of the Buyout*

*Agreement by all parties, hand deliver, email, or place in the mail a statement to the landlord*

*indicating that the tenant has rescinded the Buyout Agreement.*

*(h)  Filing of Buyout Agreements.  The landlord shall file a copy of the Buyout Agreement with*

*the Rent Board no sooner than the 46th day after the Buyout Agreement is executed by all parties, and*

*no more than ~~52~~ 59 days after the agreement is executed by all parties.  Buyout agreements rescinded*

*under subsection (g) need not be filed with the Rent Board.  ~~At the time of the filing required by this~~*

*~~subsection (h), the landlord shall pay a filing fee to be set by the Controller's Office that does~~*

*~~not exceed the Rent Board's costs related to the filing of Buyout Agreements and the posting~~*

*~~of Buyout Agreements as described in subsection (i).  Any fees collected under this~~*

*~~subsection (h) shall be retained by the Rent Board.~~*

*(i)  Posting of Buyout Agreements.  The Rent Board shall create a searchable database with*

*information received from filings under subsection (h). The database shall be accessible to the public at*

*the Rent Board's office and shall include a copy of all filings received under subsection (h). Before*

*posting a copy of any filing received under subsection (h) on its database, the Rent Board shall redact*

*all information regarding the identity of the tenants.*

*(j) Annual report.  The Rent Board shall provide an annual report to the Board of Supervisors*

*regarding the implementation of this Section 37.9E.  The first report shall be completed by January 31,*

*2016, and subsequent reports shall be completed by January 31 in subsequent years.  The report shall*

include, but not be limited to, a list of all units that have been the subject of Buyout Agreements that have been reported to the Rent Board under subsection (h). The Rent Board shall post each of these annual reports on its website.

(k) Penalties and Enforcement.

(1) A tenant who has vacated a unit based on a Buyout Agreement may bring a civil action against the landlord in San Francisco Superior Court for failure to comply with the requirements set forth in subsections (d) and (f). The landlord shall be liable for the tenant's damages. In addition, the penalty for a violation of subsection (d) shall be up to $500. The penalty for a violation of subsection (f) shall be up to 50% of the tenant's damages. The court shall award reasonable attorneys' fees to any tenant who is the prevailing party in a civil action brought under this subsection (k)(1).

(2) The City Attorney or any organization with tax exempt status under 26 United States Code Section 501(c)(3) or 501(c)(4) and with a primary mission of protecting the rights of tenants in San Francisco may bring a civil action against a landlord in San Francisco Superior Court for failure to comply with subsection (h). A landlord who has violated subsection (h) shall pay to the City an administrative penalty of up to $100 per day for each document the landlord failed to file, but in no event shall the landlord's total administrative penalty in a single civil action exceed $20,000. Any administrative penalties collected under this subsection (k)(2) shall be deposited in the General Fund of the City and County of San Francisco. The court shall award reasonable attorney's fees and costs to the City Attorney or a nonprofit organization that is the prevailing party in a civil action brought under this subsection (k)(2).

(3) A tenant may not bring a civil action under subsection (k)(1) and the City Attorney or a nonprofit organization may not bring a civil action under subsection (k)(2) more than four years after the date of the alleged violation.

1    Section 2.  The Subdivision Code is hereby amended by revising Section 1396, to read

2    as follows:

3    **SEC. 1396.  ANNUAL CONVERSION LIMITATION.**

4    (a)   This Section governing annual limitation shall apply only to ~~conversation~~ conversion

5    of residential units. This Section also is subject to the limitations established by Section

6    1396.5's suspension of the lottery.

7    (b)   Applications for conversion of residential units, whether vacant or occupied, shall

8    not be accepted by the Department of Public Works, except that a maximum of 200 units as

9    selected yearly by lottery by the Department of Public Works from all eligible applicants, may

10    be approved for conversion per year for the following categories of buildings:

11    (1)   Buildings consisting of four units in which at least three of the units have

12    been occupied continuously by the applicant owners of record as their ~~principle~~ principal place

13    of residence for three years prior to the date of registration for the lottery as selected by the

14    Director;

15    (2)   Buildings consisting of three units in which at least two of the units have

16    been occupied continuously by the applicant owners of record as their ~~principle~~ principal place

17    of residence for three years prior to the date of registration for the lottery as selected by the

18    Director;

19    (3)   Buildings consisting of two units in which at least one unit has been

20    occupied continuously by the applicant owner of record as his or her ~~principle~~ principal place

21    of residence for three years prior to the date of registration for the lottery as selected by the

22    Director;

23    (4)   Buildings consisting of five or six units that were subject to the requirements

24    of Section 1396.2(f) on or before April 15, 2013 where (A) no further evictions as set forth in

25    Section 1396.2 have occurred in the building after April 15, 2013, (B) the building and all

1    applicants first satisfied all the requirements for conversion under Section 1396.2(f) after

2    January 24, 2020 and before resumption of the lottery under ~~in accordance with the terms of~~

3    Section 1396.5; and (C) 50 percent or more of the units have been occupied continuously by

4    owners of record as their ~~principle~~ principal place of residence for ten years prior to the date of

5    registration for the lottery as selected by the Director. Applicants for such buildings must apply

6    for the lottery within five years of the resumption of the lottery under Section 1396.5(c) and

7    remain eligible until selected;

8               (5)   If the Expedited Conversion program under Section 1396.4 has been

9    suspended until 2024 as a result of a successful lawsuit against the City and County of San

10   Francisco challenging Section 1396.4(g) or 1396.5: (A) buildings consisting of five or six units

11   that participated in but were not selected for the 2012 or 2013 condominium conversion lottery

12   in which 50 percent or more of the units have been occupied continuously by the applicant

13   owners of record for no less than six years prior to the date of registration for the lottery as

14   selected by the Director or (B) buildings consisting of five or six units in which: (i) 50 percent

15   or more of the units have been occupied continuously by the applicant owners of record for no

16   less than six years prior to the date of registration for the lottery as selected by the Director

17   and (ii) the eligible applicant owners of record have a fully executed written agreement as of

18   April 15, 2013 in which the owners each have an exclusive right of occupancy to individual

19   units in the building to the exclusion of the owners of the other units. Applicants for buildings

20   identified in this Subsection must first apply for the lottery within five years of the resumption

21   of the lottery under Section 1396.5(c) and remain eligible until selected; or

22               (6)   Community apartments as defined in Section 1308 of this Code, which, on

23   or before December 31, 1982, met the criteria for community apartments in Section 1308 of

24   this Code and which were approved as a subdivision by the Department of Public Works on or

25   before December 31, 1982, and where 75 percent of the units have been occupied

1 | continuously by the applicant owners of record for three years prior to the date of registration

2 | for the lottery as selected by the Director.

3 |     (c)  The conversion of a stock cooperative as defined in Section 1308 of this Code to

4 | condominiums shall be exempt from the annual limitation imposed on the number of

5 | conversions in this Section and from the requirement to be selected by lottery where 75

6 | percent of the units have been occupied for the lottery as selected by the Director.

7 |     (d)  No application for conversion of a residential building submitted by a registrant

8 | shall be approved by the Department of Public Works to fill the unused portion of the 200-unit

9 | annual limitation for the previous year.

10 |     (e)    (1)  Any application for a condominium conversion submitted after being

11 | selected in the lottery must meet the following requirements applicable to Subdivision Code

12 | Article 9, Conversions: Sections 1381, 1382, 1383, 1386, 1387, 1388, 1389, 1390, 1391(a)

13 | and (b), 1392, 1393, 1394, and 1395.

14 |         (2)  Any building subject to Section 1396.2 shall have all applicant(s) satisfy all

15 | the requirements for conversion under Section 1396.2(f) in order be eligible to convert

16 | pursuant to this Section 1396; provided, however, that any building subject to the prohibition

17 | on conversion under Section 1396.2, in particular a property with the eviction(s) set forth in

18 | Section 1396.2(b), is ineligible for conversion.

19 |         (3)    (A)  In addition, the applicant(s) shall certify that to the extent any tenant

20 | vacated his or her unit within the seven years prior to the date of registration for the lottery as

21 | selected by the Director and before recordation of the final parcel or subdivision map, such

22 | tenant did so voluntarily or if an eviction or eviction notice occurred it was not pursuant to

23 | Administrative Code Sections 37.9(a)(8)-(14) unless such eviction or eviction notice complied

24 | with the requirements of Subsections (B)-(D) below.

25 |

1          (B)   If the evicting owner(s) recovered possession of the unit under

2     Administrative Code Sections 37.9(a)(11) or 37.9(a)(14), then the applicant(s) shall certify that

3     the original tenant reoccupied or was given an opportunity to reoccupy the unit after the

4     temporary eviction.

5          (C)   If the evicting owner(s) recovered possession of the unit under

6     Administrative Code Section 37.9(a)(10), then the applicant(s) shall certify that the

7     Department of Building Inspection required the unit be demolished or permanently removed

8     from housing use pursuant to a Notice of Violation or Emergency Order or similar notice,

9     order, or act; all the necessary permits for demolition or removal were obtained; that the

10    evicting owner(s) complied in full with Administrative Code Section 37.9(a)(10) and (c); and

11    that an additional unit or replacement unit was not constructed in the building after the

12    demolition or removal of the unit previously occupied by the evicted tenant.

13         (D)   If the evicting owner(s) recovered possession of a unit under

14    Administrative Code Section 37.9(a)(8), then the applicants shall certify that: (i) only one unit

15    in the building was the subject of such eviction during the seven year period, (ii) any surviving

16    owner or relative named as the intended resident of the unit in the Section 37.9(a)(8) eviction

17    notice also is presently an owner applying for the conversion of the same unit, and (iii) the

18    subject applicant owner has occupied the unit continuously as his or her ~~principle~~ principal

19    residence for three years prior to the date of registration for the lottery as selected by the

20    Director.

21         _(4) Notwithstanding any provisions in this Code to the contrary, the Department of_

22    _Public Works shall not sell residential condominium conversion lottery tickets to, shall not accept a_

23    _residential condominium conversion subdivision application from, and shall deny a tentative or final_

24    _subdivision or parcel map for residential condominium conversion submitted by the owner(s) of a_

25    _building if, on or after October 31, 2014, (A) a senior, disabled, or catastrophically ill tenant in the_

*building entered into a Buyout Agreement, as defined in Administrative Code Section 37.9E, for any unit in the building, or (B) two or more tenants entered into Buyout Agreements during the period beginning ten years prior to the date of the application and ending on the date of the final or parcel map approval.  This Subsection (e)(4) shall apply without regard to whether the current owner(s) was a party to the Buyout Agreement, provided that the Buyout Agreement was reported to the Rent Board as provided in Administrative Code Section 37.9E prior to the current owner(s) purchasing the building. For purposes of this subsection, a "senior" shall be a person who is 60 years or older and has been residing in the unit for ten years or more at the time of Buyout Agreement; a "disabled" tenant shall be a person who is disabled within the meaning of Title 42 United States Code Section 12102 and has been residing in the unit for ten years or more at the time of Buyout Agreement; and a "catastrophically ill" tenant shall be a person who is disabled within the meaning of Title 42 United States Code Section 12102 and who is suffering from a life threatening illness as certified by his or her primary care physician and has been residing in the unit for five years or more at the time of Buyout Agreement.*

(f)   The Department shall review all available records, including eviction notices and records maintained by the Rent Board for compliance with Subsection (e). If the Department finds that a violation of Subsection (e) occurred prior to recordation of the final map or final parcel map, the Department shall disapprove the application or subject map. If the Department finds that a violation of Subsection (e) occurred after recordation of the final map or parcel map, the Department shall take such actions as are available and within its authority to address the violation.


Section 3.  Effective and Operative Dates.

(a)  This ordinance shall become effective 30 days after enactment.  Enactment occurs when the Mayor signs the ordinance, the Mayor returns the ordinance unsigned or does not

1    sign the ordinance within ten days of receiving it, or the Board of Supervisors overrides the

2    Mayor's veto of the ordinance.

3        (b)  This ordinance shall become operative 90 120 days after enactment.

4

5        Section 4.  Scope of Ordinance.  In enacting this ordinance, the Board of Supervisors

6    intends to amend only those words, phrases, paragraphs, subsections, sections, articles,

7    numbers, punctuation marks, charts, diagrams, or any other constituent parts of the Municipal

8    Code that are explicitly shown in this ordinance as additions, deletions, Board amendment

9    additions, and Board amendment deletions in accordance with the "Note" that appears under

10   the official title of the ordinance.

11

12   APPROVED AS TO FORM:
     DENNIS J. HERRERA, City Attorney
13

14   By:  _____

15       Joshua S. White
         Deputy City Attorney
16
     n:\legana\as2014\1400214\00965472.doc

17

18

19

20

21

22

23

24

25

Supervisors Campos, Avalos, Kim, and Mar
**BOARD OF SUPERVISORS**                                              Page 14



**City and County of San Francisco**

Tails

Ordinance

City Hall
1 Dr. Carlton B. Goodlett Place
San Francisco, CA 94102-4689

---

**File Number:** 140874       **Date Passed:** October 28, 2014

Ordinance amending the Administrative Code to require landlords to provide tenants with a disclosure of the tenants' rights before the landlord commences buyout negotiations; to require landlords to file a form with the Rent Board indicating the address of the unit that may become the subject of buyout negotiations; to require all buyout agreements to be in writing and to include certain statements about the tenant's rights; to allow tenants to rescind buyout agreements for up to 45 days after the agreements are fully executed; to require landlords to file a copy of buyout agreements with the Rent Board; to require the Rent Board to create a publically available searchable database of buyout agreements; to require the Rent Board to provide an annual report to the Board of Supervisors regarding tenant buyouts; to authorize tenants to bring civil actions for actual damages and civil penalties against landlords who fail to provide the required disclosures about the tenants' rights; to authorize certain non-profits to bring civil actions for a landlord's failure to file a buyout agreement with the Rent Board; and amending the Subdivision Code to prohibit buildings from entering the condominium conversion lottery if the owners of the building have entered certain tenant buyout agreements.

      October 08, 2014 Budget and Finance Committee - AMENDED, AN AMENDMENT OF THE WHOLE BEARING NEW TITLE

      October 08, 2014 Budget and Finance Committee - RECOMMENDED AS AMENDED

      October 21, 2014 Board of Supervisors - AMENDED
            Ayes: 11 - Avalos, Breed, Campos, Chiu, Cohen, Farrell, Kim, Mar, Tang, Wiener and Yee

      October 21, 2014 Board of Supervisors - PASSED ON FIRST READING AS AMENDED
            Ayes: 7 - Avalos, Campos, Chiu, Cohen, Kim, Mar and Yee
            Noes: 4 - Breed, Farrell, Tang and Wiener

      October 28, 2014 Board of Supervisors - FINALLY PASSED
            Ayes: 7 - Avalos, Campos, Chiu, Cohen, Kim, Mar and Yee
            Noes: 4 - Breed, Farrell, Tang and Wiener

---

File No. 140874

**I hereby certify that the foregoing Ordinance was FINALLY PASSED on 10/28/2014 by the Board of Supervisors of the City and County of San Francisco.**

_____

**Angela Calvillo
Clerk of the Board**

| Unsigned | 11/7/2014 |
|:---:|:---:|
| **Mayor** | **Date Approved** |

I hereby certify that the foregoing ordinance, not being signed by the Mayor within the time limit as set forth in Section 3.103 of the Charter, or time waived pursuant to Board Rule 2.14.2, became effective without his approval in accordance with the provision of said Section 3.103 of the Charter or Board Rule 2.14.2.

_____

Angela Calvillo
Clerk of the Board

# MEDIATION SERVICES



FOR OUTSTANDING ADR SERVICES

Voted into the **Hall of Fame** In The Recorder's "Best of" Poll

5 YEARS IN A ROW 2010 - 2014



THE BAR ASSOCIATION OF SAN FRANCISCO

## TESTIMONIALS

"This was the third attempt to mediate this case, and the BASF mediator was far and away the best mediator. I dare say that we would not have settled today but for his efforts."

*George Yuhas, Esq.*
*Orrick, Herrington & Sutcliffe LLP*

"We had an excellent experience and, after 8½ hours of mediation, [the BASF mediator] settled a very difficult case involving claims against four clients of ours by a wealthy investor who claimed inadequate disclosure was made."

*Robert Charles Friese, Esq.*
*Shartsis Friese LLP*

"When the other side made their offer, I thought there was no way we would reach an agreement — we were too far apart, but the mediator brought us together. He saved me a lot of time and aggravation by facilitating a settlement. Thanks!"

*Leslie Caplan*
*Global Warming Campaign Manager*
*Bluewater Network*

"BASF staff was very helpful — stayed on the task and kept after a hard to reach party. The mediator was great!"

*Mark Abelson, Esq.*
*Campagnoli, Abelson & Campagnoli*

"The [BASF] mediator was excellent! He was effective with some strong, forceful personalities."

*Denise A. Leadbetter, Esq.*
*Zacks, Utrecht & Leadbetter*



PROCEDURES, PODCASTS, FORMS, MEDIATOR BIOGRAPHIES AND PHOTOGRAPHS:

**www.sfbar.org/mediation**

**adr@sfbar.org or**
**415-982-1600**

Experienced mediators are available in the following areas

Business
Civil Rights
Commercial
Construction
Contracts
Disability
Discrimination
Education
Employment/Workplace
Environmental
Family
Family-Certified Specialists
Fee Disputes
Financial
Government
Insurance
Intellectual Property
Intra-Organizational
Labor
Landlord/Tenant
Land Use
LGBT Issues
Malpractice: Legal-Medical-Professional
Partnership Dissolutions
Personal Injury
Probate/Trust
Products Liability
Real Estate
Securities
Taxation
Uninsured Motorist
And more...

## Steps:

The forms you need can be found at **www.sfbar.org/esp**, or email adr@sfbar.org or call 415-782-8905 for a packet to be sent to you.

❶ Please complete the ESP Agreement and return it to BASF via email at adr@sfbar.org or by fax to 415-989-0381. You don't have to get the other parties to sign, just send yours.

❷ When all parties have signed the ESP Agreement, you will be sent the Notice of ESP, along with an invoice.

❸ There is a $295 administrative fee per party, with a cap of $590 for multiple parties represented by the same attorney. You can pay by check, money order or credit card.

❹ Send your administrative fee by fax, email or mail to: BASF / ESP, 301 Battery Street, Third Floor, San Francisco, California 94111.

❺ When BASF receives the fees from all parties, your matter will be assigned to a panelist (or panel of 2), who you will work with to set the date, time and location for your conference.

❻ If you must reschedule your ESP conference date, work with the other side and your panelist(s) to set the new date. BASF does not need to be notified.

❼ Before your conference, provide a copy of your description of the dispute to all parties and panelists. BASF does not need a copy.

❽ If the matter is settled in your ESP conference, congratulations!

❾ If the matter is not settled in your ESP conference, your initial court date remains the same.

## Who are the Panelists?

They are experienced attorneys with at least 10 years of trial experience. Panels consist of one plaintiff and one defense attorney. Experienced neutrals are appointed in both types and types of cases or panels are appointed in select areas as a whole panel.

### Costs

There is a $295 administrative fee per party, capped at $590 for multiple parties represented by the same attorney. You may pay for the cost of running this program if you have a fee waiver.

### Contact

Email: adr@sfbar.org
Telephone: 415-782-8905
Fax: 415-989-0381

## What is ESP?

The Bar Association of San Francisco's **Early Settlement Program** (ESP) is available as one of San Francisco Superior Court's Alternative Dispute Resolution (ADR) programs (Local Rule 4.3).

ESP is a **highly successful** ADR program that handles cases in areas of law such as business, personal injury, employment, labor, civil rights, discrimination, insurance, malpractice, landlord/tenant, and many others.

ESP is **unique** in that the panelists, in helping you move toward settlement, can provide you confidential feedback about their evaluation of your case, including opinions as to potential case value.

For more information as well as the complete Policies & Procedures, go to: **www.sfbar.org/esp**

# FAST

Do you have a case filed in San Francisco Superior Court and want to settle sooner than your trial date?

# ECONOMICAL



# FAIR

Want the skills of experienced negotiators in arriving at a realistic, satisfying settlement?

Consider The Bar Association of San Francisco's

# Early Settlement Program



Learn more about the Early Settlement Program--scan the QRCode or visit www.sfbar.org/adr/esp

## The Early Settlement Program:

## Early Settlement provides:

# QUALITY

## WHAT IS BASF'S MEDIATION SERVICE?

The Bar Association of San Francisco's Mediation Services is a private mediation service which will assist you with almost any type of dispute, from simple contract disputes to complex commercial matters.

## WHO ARE THE MEDIATORS?

They are established mediators who have private mediation practices and have met our extensive experience requirements. By going through BASF you receive the services of these highly qualified mediators at a great value.

## HOW DO I LEARN MORE ABOUT THE MEDIATORS?

BASF's website at www.sfbar.org/mediation provides bios, photos and hourly rates of mediators. You can search by name or by area of law needed for your case. BASF staff is always available to assist you with selection or to answer questions.

## HOW MUCH DOES THE SERVICE COST?

A $295 per party administrative fee is paid to BASF at the time the Consent to Mediate form is filed. This fee covers the first hour of mediator preparation time and the first two hours of session time. Time beyond that is paid at the mediator's normal hourly rate.

# EXPERIENCE

## HOW IS THE MEDIATOR CHOSEN?

You may request a specific mediator from our website (www.sfbar.org/mediation) and indicate your choice on the BASF Consent to Mediate form, or you may indicate on the form that you would like BASF staff to assist with the selection.

## WHY SHOULD I GO THROUGH BASF? CAN'T I JUST CALL THE MEDIATOR DIRECTLY?

BASF mediators have agreed to provide three free hours as a service to BASF. If you go directly to one of our mediators, you do not qualify for the free hours unless you notify us. Once you have filed with us, you will talk directly to the mediator to ask questions and to set a convenient mediation date and time.

## HOW LONG IS THE MEDIATION SESSION?

The time spent in mediation will vary depending on your dispute. BASF mediators are dedicated to reaching a settlement, whether you need a few hours or several days.

## WHO CAN USE THE SERVICE?

BASF mediation can be utilized by anyone and is NOT limited to San Francisco residents or issues. Also, the service may be used before a court action is filed or at any time during a court action.

# TRUST

## OUR CASE IS FILED IN COURT. HOW DO WE USE BASF'S MEDIATION SERVICES?

When you file the San Francisco Superior Court's Stipulation to ADR form, check the box indicating "Mediation Services of BASF." Then complete BASF's Consent to Mediate form found on our website and file it with us. (If the matter was filed in a different county, please check with that court for the appropriate process.)

## WE ARE ON A DEADLINE; HOW QUICKLY CAN WE MEDIATE?

Once all parties have filed all the paperwork, BASF can normally have you in touch with the mediator within a day or two. If there is a deadline, BASF staff will give the matter top priority.

## WHAT TYPES OF DISPUTES CAN I MEDIATE?

BASF mediators are trained in 30+ areas of law. If you don't see the area you need on our website or in this brochure, contact us; it is very likely we can match your need with one of our panelists.

## MORE INFORMATION

Visit our website (www.sfbar.org/mediation) where you can search by name or by area of law. For personal assistance, please call 415-982-1600.

# WWW.SFBAR.ORG/MEDIATION • ADR@SFBAR.ORG • 415.982.1600



# Superior Court of California, County of San Francisco
## Alternative Dispute Resolution
## Program Information Package



> The plaintiff must serve a copy of the ADR information package
> on each defendant along with the complaint.  (CRC 3.221(c))

## WHAT IS ADR?
Alternative Dispute Resolution (ADR) is the term used to describe the various options available for settling a dispute without a trial.  There are many different ADR processes, the most common forms of which are mediation, arbitration and settlement conferences.  In ADR, trained, impartial people decide disputes or help parties decide disputes themselves. They can help parties resolve disputes without having to go to court.

## WHY CHOOSE ADR?
"It is the policy of the Superior Court that every noncriminal, nonjuvenile case participate either in an early settlement conference, mediation, arbitration, early neutral evaluation or some other alternative dispute resolution process prior to trial." (Local Rule 4)

ADR can have a number of advantages over traditional litigation:

- **ADR can save time.**  A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.
- **ADR can save money,** including court costs, attorney fees, and expert fees.
- **ADR encourages participation.**  The parties may have more opportunities to tell their story than in court and may have more control over the outcome of the case.
- **ADR is more satisfying.**  For all the above reasons, many people participating in ADR have reported a high degree of satisfaction.

## HOW DO I PARTICIPATE IN ADR?
Litigants may elect to participate in ADR at any point in a case.  General civil cases may voluntarily enter into the court's ADR programs by any of the following means:

- Filing a Stipulation to ADR: Complete and file the Stipulation form (attached to this packet) at the clerk's office located at 400 McAllister Street, Room 103;
- Indicating your ADR preference on the Case Management Statement (also attached to this packet); or
- Contacting the court's ADR office (see below) or the Bar Association of San Francisco's ADR Services at 415-782-8905 or www.sfbar.org/adr for more information.

**For more information about ADR programs or dispute resolution alternatives, contact:**

Superior Court Alternative Dispute Resolution
400 McAllister Street, Room 103, San Francisco, CA   94102
415-551-3869

*Or, visit the court ADR website at www.sfsuperiorcourt.org*

The San Francisco Superior Court offers different types of ADR processes for general civil matters; each ADR program is described in the subsections below:

## 1) SETTLEMENT CONFERENCES

The goal of settlement conferences is to provide participants an opportunity to reach a mutually acceptable settlement that resolves all or part of a dispute early in the litigation process.

**(A) THE BAR ASSOCIATION OF SAN FRANCISCO (BASF) EARLY SETTLEMENT PROGRAM (ESP):** ESP remains as one of the Court's ADR programs (see Local Rule 4.3) but parties must select the program – the Court no longer will order parties into ESP.

**Operation:** Panels of pre-screened attorneys (one plaintiff, one defense counsel) each with at least 10 years' trial experience provide a minimum of two hours of settlement conference time, including evaluation of strengths and weakness of a case and potential case value. On occasion, a panelist with extensive experience in both plaintiff and defense roles serves as a sole panelist. BASF handles notification to all parties, conflict checks with the panelists, and full case management. The success rate for the program is 78% and the satisfaction rate is 97%. Full procedures are at: www.sfbar.org/esp.

**Cost:** BASF charges an administrative fee of $295 per party with a cap of $590 for parties represented by the same counsel. Waivers are available to those who qualify. For more information, call Marilyn King at 415-782-8905, email adr@sfbar.org or see the enclosed brochure.

**(B) MANDATORY SETTLEMENT CONFERENCES:** Parties may elect to apply to the Presiding Judge's department for a specially-set mandatory settlement conference. See Local Rule 5.0 for further instructions. Upon approval of the Presiding Judge, the court will schedule the conference and assign the case for a settlement conference.

## 2) MEDIATION

Mediation is a voluntary, flexible, and confidential process in which a neutral third party facilitates negotiations. The goal of mediation is to reach a mutually satisfactory agreement, before incurring the expense of going to court, that resolves all or part of a dispute after exploring the interests, needs, and priorities of the parties in light of relevant evidence and the law. A mediator strives to bring the parties to a mutually beneficial settlement of the dispute.

**(A) MEDIATION SERVICES OF THE BAR ASSOCIATION OF SAN FRANCISCO,** in cooperation with the Superior Court, is designed to help civil litigants resolve disputes before they incur substantial costs in litigation. While it is best to utilize the program at the outset of litigation, parties may use the program at any time while a case is pending.

**Operation:** Experienced professional mediators, screened and approved, provide one hour of preparation time and the first two hours of mediation time. Mediation time beyond that is charged at the mediator's hourly rate. BASF pre-screens all mediators based upon strict educational and experience requirements. Parties can select their mediator from the panels at www.sfbar.org/mediation or BASF can assist with mediator selection. The BASF website contains photographs, biographies, and videos of the mediators as well as testimonials to assist with the selection process. BASF staff handles conflict checks and full case management.

Mediators work with parties to arrive at a mutually agreeable solution. The success rate for the program is 64% and the satisfaction rate is 99%.

**Cost***:** BASF charges an administrative fee of $295 per party. The hourly mediator fee beyond the first three hours will vary depending on the mediator selected. Waivers of the administrative fee are available to those who qualify. For more information, call Marilyn King at 415-782-8905, email adr@sfbar.org  or see the enclosed brochure.

**(B) PRIVATE MEDIATION:** Although not currently a part of the court's ADR program, civil disputes may also be resolved through private mediation. Parties may elect any private mediator or mediation organization of their choice; the selection and coordination of private mediation is the responsibility of the parties. Parties may find mediators and organizations on the Internet. The cost of private mediation will vary depending on the mediator selected.

## 3)  ARBITRATION

An arbitrator is neutral attorney who presides at a hearing where the parties present evidence through exhibits and testimony. The arbitrator applies the law to the facts of the case and makes an award based upon the merits of the case.

**(A) JUDICIAL ARBITRATION:** When the court orders a case to arbitration it is called "judicial arbitration". The goal of arbitration is to provide parties with an adjudication that is earlier, faster, less formal, and usually less expensive than a trial.

**Operation:**  Pursuant to CCP 1141.11 and Local Rule 4, all civil actions in which the amount in controversy is $50,000 or less, and no party seeks equitable relief, shall be ordered to arbitration. (Upon stipulation of all parties, other civil matters may be submitted to judicial arbitration.) A case is ordered to arbitration after the Case Management Conference. An arbitrator is chosen from the court's arbitration panel. Arbitrations are generally held between 7 and 9 months after a complaint has been filed. Judicial arbitration is not binding unless all parties agree to be bound by the arbitrator's decision. Any party may request a trial within 60 days after the arbitrator's award has been filed.

Local Rule 4.2 allows for mediation in lieu of judicial arbitration, so long as the parties file a stipulation to mediate after the filing of a complaint. If settlement is not reached through mediation, a case proceeds to trial as scheduled.

**Cost:** There is no cost to the parties for judicial arbitration.

**(B) PRIVATE ARBITRATION:** Although not currently a part of the court's ADR program, civil disputes may also be resolved through private arbitration. Here, the parties voluntarily consent to arbitration. If all parties agree, private arbitration may be binding and the parties give up the right to judicial review of the arbitrator's decision. In private arbitration, the parties select a private arbitrator and are responsible for paying the arbitrator's fees.

TO PARTICIPATE IN ANY OF THE COURT'S ADR PROGRAMS, PLEASE COMPLETE THE ATTACHED STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION AND SUBMIT IT TO THE COURT. <u>YOU MUST ALSO CONTACT BASF TO ENROLL IN THE LISTED BASF PROGRAMS. THE COURT DOES NOT FORWARD COPIES OF COMPLETED STIPULATIONS TO BASF.</u>

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and address) | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.: <br> ATTORNEY FOR (Name): | |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO <br> 400 McAllister Street <br> San Francisco, CA 94102-4514 | |
| PLAINTIFF/PETITIONER: <br><br> DEFENDANT/RESPONDENT: | |

| STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION (ADR) | CASE NUMBER: <br><br> DEPARTMENT 610 |
|---|---|

1) **The parties hereby stipulate that this action shall be submitted to the following ADR process:**

☐ **Early Settlement Program of the Bar Association of San Francisco (BASF) -** Pre-screened experienced attorneys provide a minimum of 2 hours of settlement conference time for a BASF administrative fee of $295 per party. Waivers are available to those who qualify. BASF handles notification to all parties, conflict checks with the panelists, and full case management. www.sfbar.org/esp

☐ **Mediation Services of BASF -** Experienced professional mediators, screened and approved, provide one hour of preparation and the first two hours of mediation time for a BASF administrative fee of $295 per party. Mediation time beyond that is charged at the mediator's hourly rate. Waivers of the administrative fee are available to those who qualify. BASF assists parties with mediator selection, conflicts checks and full case management. www.sfbar.org/mediation

☐ **Private Mediation -** Mediators and ADR provider organizations charge by the hour or by the day, current market rates. ADR organizations may also charge an administrative fee. Parties may find experienced mediators and organizations on the Internet.

☐ **Judicial Arbitration -** Non-binding arbitration is available to cases in which the amount in controversy is $50,000 or less and no equitable relief is sought. The court appoints a pre-screened arbitrator who will issue an award. There is no fee for this program. www.sfsuperiorcourt.org

☐ **Other ADR process (describe)** _____

2) **The parties agree that the ADR Process shall be completed by (date):** _____

3) **Plaintiff(s) and Defendant(s) further agree as follows:**

_____

_____

_____

| | |
|---|---|
| _____ <br> Name of Party Stipulating | _____ <br> Name of Party Stipulating |
| _____ <br> Name of Party or Attorney Executing Stipulation | _____ <br> Name of Party or Attorney Executing Stipulation |
| _____ <br> Signature of Party or Attorney | _____ <br> Signature of Party or Attorney |
| ☐ Plaintiff ☐ Defendant ☐ Cross-defendant | ☐ Plaintiff ☐ Defendant ☐ Cross-defendant |
| Dated: _____ | Dated: _____ |

☐ *Additional signature(s) attached*

ADR-2  04/14                          STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.: FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF**
STREET ADDRESS:
MAILING ADDRESS:
CITY AND ZIP CODE:
BRANCH NAME:

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| **CASE MANAGEMENT STATEMENT**<br>*(Check one):* ☐ **UNLIMITED CASE** ☐ **LIMITED CASE**<br>(Amount demanded (Amount demanded is $25,000<br>exceeds $25,000) or less) | CASE NUMBER: |
|---|---|

A **CASE MANAGEMENT CONFERENCE** is scheduled as follows:

Date: Time: Dept.: Div.: Room:

Address of court *(if different from the address above):*

☐ Notice of Intent to Appear by Telephone, by *(name):*

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one):*
   a. ☐ This statement is submitted by party *(name):*
   b. ☐ This statement is submitted **jointly** by parties *(names):*

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a. The complaint was filed on *(date):*
   b. ☐ The cross-complaint, if any, was filed on *(date):*

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐ All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.
   b. ☐ The following parties named in the complaint or cross-complaint
      (1) ☐ have not been served *(specify names and explain why not):*

      (2) ☐ have been served but have not appeared and have not been dismissed *(specify names):*

      (3) ☐ have had a default entered against them *(specify names):*

   c. ☐ The following additional parties may be added *(specify names, nature of involvement in case, and date by which they may be served):*

4. **Description of case**
   a. Type of case in ☐ complaint ☐ cross-complaint *(Describe, including causes of action):*

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-110 [Rev. July 1, 2011] | **CASE MANAGEMENT STATEMENT** | Cal. Rules of Court,<br>rules 3.720–3.730<br>www.courts.ca.gov |
|---|---|---|

CM-110

| | CASE NUMBER: |
|---|---|
| PLAINTIFF/PETITIONER: | |
| DEFENDANT/RESPONDENT: | |

4. b. Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

☐ *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5. **Jury or nonjury trial**
   The party or parties request ☐ a jury trial ☐ a nonjury trial. *(If more than one party, provide the name of each party requesting a jury trial):*

6. **Trial date**
   a. ☐ The trial has been set for *(date):*
   b. ☐ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

   c. Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7. **Estimated length of trial**
   The party or parties estimate that the trial will take *(check one):*
   a. ☐ days *(specify number):*
   b. ☐ hours (short causes) *(specify):*

8. **Trial representation** *(to be answered for each party)*
   The party or parties will be represented at trial ☐ by the attorney or party listed in the caption ☐ by the following:
   a. Attorney:
   b. Firm:
   c. Address:
   d. Telephone number:
   e. E-mail address:
   f. Fax number:
   g. Party represented:
   ☐ Additional representation is described in Attachment 8.

9. **Preference**
   ☐ This case is entitled to preference *(specify code section):*

10. **Alternative dispute resolution (ADR)**
    a. **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 for information about the processes available through the court and community programs in this case.
       (1) For parties represented by counsel: Counsel ☐ has ☐ has not provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.
       (2) For self-represented parties: Party ☐ has ☐ has not reviewed the ADR information package identified in rule 3.221.
    b. **Referral to judicial arbitration or civil action mediation** (if available).
       (1) ☐ This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.
       (2) ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.
       (3) ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

10. c. Indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or
have already participated in *(check all that apply and provide the specified information)*:

| | The party or parties completing this form **are willing** to participate in the following ADR processes *(check all that apply)*: | If the party or parties completing this form in the case **have agreed** to participate in or have already completed an ADR process or processes, indicate the status of the processes *(attach a copy of the parties' ADR stipulation)*: |
|---|---|---|
| (1) Mediation | ☐ | ☐ Mediation session not yet scheduled<br>☐ Mediation session scheduled for *(date)*:<br>☐ Agreed to complete mediation by *(date)*:<br>☐ Mediation completed on *(date)*: |
| (2) Settlement conference | ☐ | ☐ Settlement conference not yet scheduled<br>☐ Settlement conference scheduled for *(date)*:<br>☐ Agreed to complete settlement conference by *(date)*:<br>☐ Settlement conference completed on *(date)*: |
| (3) Neutral evaluation | ☐ | ☐ Neutral evaluation not yet scheduled<br>☐ Neutral evaluation scheduled for *(date)*:<br>☐ Agreed to complete neutral evaluation by *(date)*:<br>☐ Neutral evaluation completed on *(date)*: |
| (4) Nonbinding judicial arbitration | ☐ | ☐ Judicial arbitration not yet scheduled<br>☐ Judicial arbitration scheduled for *(date)*:<br>☐ Agreed to complete judicial arbitration by *(date)*:<br>☐ Judicial arbitration completed on *(date)*: |
| (5) Binding private arbitration | ☐ | ☐ Private arbitration not yet scheduled<br>☐ Private arbitration scheduled for *(date)*:<br>☐ Agreed to complete private arbitration by *(date)*:<br>☐ Private arbitration completed on *(date)*: |
| (6) Other *(specify)*: | ☐ | ☐ ADR session not yet scheduled<br>☐ ADR session scheduled for *(date)*:<br>☐ Agreed to complete ADR session by *(date)*:<br>☐ ADR completed on *(date)*: |

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**11. Insurance**

a. ☐ Insurance carrier, if any, for party filing this statement *(name):*

b. Reservation of rights: ☐ Yes ☐ No

c. ☐ Coverage issues will significantly affect resolution of this case *(explain):*

**12. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case and describe the status.

☐ Bankruptcy ☐ Other *(specify):*

Status:

**13. Related cases, consolidation, and coordination**

a. ☐ There are companion, underlying, or related cases.

(1) Name of case:
(2) Name of court:
(3) Case number:
(4) Status:

☐ Additional cases are described in Attachment 13a.

b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party):*

**14. Bifurcation**

☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

**15. Other motions**

☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*

**16. Discovery**

a. ☐ The party or parties have completed all discovery.

b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery):*

| Party | Description | Date |
|---|---|---|

c. ☐ The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated *(specify):*

**CASE MANAGEMENT STATEMENT**

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**17. Economic litigation**

a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90–98 will apply to this case.

b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

**18. Other issues**

☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):*

**19. Meet and confer**

a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):*

b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

**20. Total number of pages attached** *(if any):* _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

☐ Additional signatures are attached.



# Superior Court of California
# County of San Francisco

**Expedited Jury Trial Information Sheet**

## What is an expedited jury trial?

An expedited jury trial is a trial that is much faster and has a smaller jury than a traditional jury trial. An expedited jury trial differs from a regular jury trial in several ways:

- **The trial will be shorter.** Each side has 3 hours to make opening statements, present witnesses and evidence, and make closing statements.

- **The jury will be smaller.** There will be 8 jurors instead of 12.

- **Choosing the jury will be faster.** The parties will exercise fewer preemptory challenges.

- **Parties will waive some post trial motions and rights to appeal.** Appeals are allowed only if there is: (1) Misconduct of the judicial officer that materially affected substantial rights of a party; (2) Jury misconduct; or (3) Corruption or fraud or some other bad act that prevented a fair trial.

  In addition, parties may not ask the judge to set the jury verdict aside, except on those same grounds.

## Does the jury have to reach a unanimous decision?

No. Just as in a traditional civil jury trial, only three-quarters of the jury must agree in order to reach a decision in an expedited jury trial. With 8 people on the jury, that means that at least 6 of the jurors must agree on the verdict in an expedited jury trial.

## Is the decision of the jury binding on the parties?

Generally, yes. A verdict from a jury in an expedited jury trial is like a verdict in a traditional jury trial. However, parties who take part in expedited jury trials are allowed to make an agreement before the trial that guarantees that the defendant will pay a certain amount to the plaintiff even if the jury decides on a lower payment or no payment. That agreement may also impose a cap, or maximum, on the highest amount that a defendant has to pay, even if the jury decides on a higher amount. These agreements are commonly known as "high/low agreements."

## How do I qualify for an expedited jury trial?

The process can be used in any civil case. To have an expedited jury trial, both sides must want one. Each side must agree that it will use only three hours to put on its case and agree to the other rules described above. This agreement must be put in writing in a Stipulation and submitted along with a Proposed Consent Order Granting an Expedited Jury Trial, which is given to the court for approval. The court will usually agree to the Consent Order.

## How do I request an expedited jury trial?

To have an expedited jury trial, both sides must submit a Stipulation and Proposed Consent Order for Expedited Jury Trial to the court for approval. This may happen at three stages of litigation:

1) **At Filing and Prior to Setting of a Trial Date**: Parties may submit a Stipulation to Expedited Jury Trial to Dept. 610 using the attached short form (see below). Parties must

*Information adapted from Judicial Council's Expedited Jury Trial Information Sheet EJT-010-INFO, New January 1, 2011*

also submit a Proposed Consent Order for Expedited Jury Trial to Dept. 610.

2) **After a Trial Date has been Set**: Parties submit a Stipulation and Proposed Consent Order for Expedited Jury Trial directly to Dept. 206 at least *30 days* prior to the assigned trial date.

3) **After Trial Assignment**: A Proposed Consent Order for Expedited Jury Trial may be submitted immediately to the assigned trial department not less than *30 days* prior to the assigned trial date.

Also, after a case is assigned to a particular judge for trial, the parties may ask the trial judge to have an Expedited Jury Trial, and the judge may permit the parties to then sign the appropriate Stipulation and Proposed Consent Order for Expedited Jury Trial.

**Can I change my mind after agreeing to an expedited jury trial?**

No, unless the other side or the court agrees. Once you and the other side have agreed to take part in an expedited jury trial the agreement is binding on both sides.

------------------------------------------------------------------------

### Expedited Jury Trial Request
*Please submit a copy of this request to Dept. 610.*

Case No. _____

Case Name: _____                    v.

_____

The parties would like this action to be submitted to an Expedited Jury Trial.

The parties shall submit a consent order to the Court on or by _____.

| | | |
|---|---|---|
| _____ | _____ | _____ |
| Name of Party | Name of Party/Attorney | Signature of Party |
| | | Dated: _____ |
| _____ | _____ | _____ |
| Name of Party | Name of Party/Attorney | Signature of Party |
| | | Dated: _____ |
| _____ | _____ | _____ |
| Name of Party | Name of Party/Attorney | Signature of Party |
| | | Dated: _____ |

Please note: a [Proposed] Consent Order for Expedited Jury Trial is still required in addition to this stipulation form.

> You can find the law and rules governing expedited jury trials in Code of Civil Procedure sections 630.01–630.12 and in rules 3.1545–3.1552 of the California Rules of Court. You can find these at any county law library or online. The statutes are online at *www.leginfo.ca.gov/calaw.html.* The rules are at *www.courts.ca.gov/rules.*

*Information adapted from Judicial Council's Expedited Jury Trial Information Sheet EJT-010-INFO, New January 1, 2011*