1
2
3
4
5              UNITED STATES DISTRICT COURT

6            NORTHERN DISTRICT OF CALIFORNIA

7
8
9
10   SAN FRANCISCO APARTMENT
     ASSOCIATION, et al.,                    Case No.  15-cv-01545-PJH
11
                Plaintiffs,
12                                           **ORDER GRANTING MOTION FOR**
          v.                                 **JUDGMENT ON THE PLEADINGS**
13
     CITY AND COUNTY OF SAN
14   FRANCISCO,
15              Defendant.
16
17

18        Defendant's motion for judgment on the pleadings came on for hearing before this

19   court on September 30, 2015.  Plaintiffs appeared by their counsel James R. Parrinello

20   and Christopher E. Skinnell, and defendant appeared by its counsel Assistant San

21   Francisco City Attorney Jeremy M. Goldman.  Having read the parties' papers and

22   carefully considered their arguments and the relevant legal authority, the court hereby

23   GRANTS the motion as follows.

24                              **BACKGROUND**

25        On October 21, 2014, the San Francisco Board of Supervisors enacted Ordinance

26   No. 225-14 ("the Ordinance"), which became operative on March 7, 2015, and imposes

27   requirements on the process of negotiating tenant buyouts.

28        The Ordinance amended the San Francisco Administrative Code to add § 37.9E,

1      1) to require landlords to provide tenants with a disclosure of the tenants'
rights before the landlord commences buyout negotiations; 2) to require
2      landlords to file a form with the [San Francisco] Rent Board indicating the
address of the unit that may become the subject of buyout negotiations; 3) to
3      require all buyout agreements to be in writing and to include certain
statements about the tenant's rights; 4) to allow tenants to rescind buyout
4      agreements for up to 45 days after the agreements are fully executed; 5) to
require landlords to file a copy of buyout agreements with the Rent Board
5      and to pay a fee to the Rent Board; 6) to require the Rent Board to create a
publically available, searchable database of buyout agreements; 7) to require
6      the Rent Board to provide an annual report to the Board of Supervisors
regarding tenant buyouts; 8) to authorize tenants to bring civil actions for
7      actual damages and civil penalties against landlords who fail to provide the
required disclosures about the tenants' rights; and 9) to authorize certain
8      non-profits to bring civil actions for a landlord's failure to file a buyout
agreement with the Rent Board.

9

10   Ord. No. 225-14.  The Ordinance also amended § 1396 of the San Francisco Subdivision

11   Code to "prohibit buildings from entering the condominium conversion lottery if the

12   owners of the building have entered certain tenant buyout agreements."  Id.

13        The stated purpose of the Ordinance is to "increase the fairness of buyout

14   negotiations and agreements by requiring landlords[1] to provide tenants with a statement

15   of their rights and allowing tenants to rescind a buyout agreement for 45 days after

16   signing the agreement, thus reducing the likelihood of landlords pressuring tenants into

17   signing buyout agreements without allowing the tenants sufficient time to consult with a

18   tenants' rights specialist."  S.F. Admin. Code § 37.9E(a).  Another stated goal of the

19   Ordinance is to "help the City collect data about . . . the number, location, and terms of

20   the buyout agreements[,]" in order to understand the level of tenant displacement in San

21   Francisco.  See id.

22        Plaintiffs in this action are four organizations of residential landlords, property

23   managers, and/or realtors – the San Francisco Apartment Association ("SFAA"), the

24   Coalition for Better Housing ("CBH"), the Small Property Owners of San Francisco

25   Institute ("SPOSFI"), and the San Francisco Association of Realtors ("SFAR") – and one

26

27    1  Chapter 37 of the Administrative Code defines "landlord" as "[a]n owner, lessor,
sublessor, who receives or is entitled to receive rent for the use and occupancy of any
28   residential rental unit or portion thereof in the City and County of San Francisco, and the
agent, representative or successor of any of the foregoing."  S.F. Admin. Code § 37.2(h).

United States District Court
Northern District of California

individual landlord, Norman T. Larson ("Larson").  Defendant is the City and County of San Francisco ("CCSF").

Plaintiffs initiated this action by filing a "petition for writ of mandate" and a "complaint for injunctive and declaratory relief" in the Superior Court of California, County of San Francisco, on March 5, 2015.  Plaintiffs seek an order declaring the Ordinance to be illegal and unenforceable in whole or in part.  CCSF removed the case on April 3, 2015, alleging federal question jurisdiction based on allegations of federal constitutional violations.  Plaintiffs assert three causes of action – (1) writ of mandate, based on alleged violation of rights under the U.S. and California Constitutions;[2] (2) injunctive relief; and (3) declaratory relief.

In the first cause of action, plaintiffs allege that the Ordinance violates free speech rights under the U.S. and California Constitutions; violates "the right to enter into voluntary settlement of disputes" (no constitutional provision specified); violates equal protection and due process rights under the U.S. and California Constitutions; and violates the right to privacy under the California Constitution.  Plaintiffs challenge the following provisions of the Ordinance:

*The Disclosure Provision* – Prior to commencing buyout negotiations,[3] the landlord must give the tenant a form developed by the San Francisco Rent Board containing a disclosure of tenants' rights and an explanation of how to obtain advice and information regarding buyout agreements.  S.F. Admin. Code § 37.9E(d)(1)-(6).  The form

---

[2]   Although plaintiffs' state court complaint refers only to a "petition for writ of mandate," the court assumes that plaintiffs are seeking this relief under California Code of Civil Procedure § 1085.  However, § 1085 is a "procedural mechanism," <u>Kreeft v. City of Oakland</u>, 68 Cal. App. 4th 46, 52 (1998), not a substantive claim.  Moreover, it does not apply in federal court.  <u>Hill v. County of Sacramento</u>, 466 F. App'x 577, 579 (9th Cir. 2012) (§ 1085 "authorizes only state courts to issue writs of mandate"); <u>Shaheen v. Cal. Supreme Court</u>, 2002 WL 31928502, at *1 (N.D. Cal. Dec. 27, 2002) (same).  Accordingly, the court construes the federal constitutional portions of this cause of action as a claim under 42 U.S.C. § 1983.

[3]   "Buyout Negotiations" refers to "any discussion or bargaining, whether oral or written, between a landlord and a tenant regarding the possibility of entering into a Buyout Agreement," which is an agreement "wherein the landlord pays the tenant money or other consideration to vacate the rental unit."  S.F. Admin. Code § 37.9E(c).

1    must also disclose the condominium conversion restrictions that apply to certain buyouts

2    and, if the landlord is an entity, the identity of persons within that entity who have

3    negotiating and decision-making authority.  Id. § 37.9E(d)(7)-(8).  In addition, the form

4    must contain a space for the tenant to sign and write the date he/she was provided with

5    the disclosure.  Id. § 37.9E(d)(10).  Plaintiffs allege that the Disclosure Provision violates

6    landlords' right to free speech, and to due process and/or equal protection.  See Cplt

7    ¶¶ 14, 16.

8         The Notification Provision – Prior to commencing buyout negotiations,

9    landlords must provide the Rent Board with a statement signed under penalty of perjury

10   that the landlord provided each tenant with the disclosures described in § 37.9E(d) and

11   set forth above.  S.F. Admin. Code § 37.9E(e)(4).  The notification must also include the

12   landlord's name and business contact information, the tenant's name, and the address of

13   the unit that may be the subject of buyout negotiations.  Id. § 37.9E(e)(1)-(3).  The Rent

14   Board is required to make this information publicly available, except that information

15   regarding the tenant's identity shall be redacted.  Id. § 37.9E(e).  Plaintiffs assert that the

16   Notification Provision violates landlords' rights to free speech, equal protection, and

17   privacy.  See Cplt ¶ 16.

18        The Rescission Provision – The Ordinance contains a procedural protection

19   for tenants in the form of a right of rescission for a period of 45 days following execution

20   of the agreement.  S.F. Admin. Code § 37.9E(g).  Plaintiffs contend that because the

21   Rescission Provision grants a tenant the power to unilaterally rescind a buyout

22   agreement for 45 days after it is entered into, but grants an owner no similar power, it

23   violates the landlords' rights to equal protection and/or due process.  See Cplt ¶ 16.

24        The Database Provision – If a buyout agreement is ultimately signed (and

25   not rescinded by the tenant), landlords must file a copy with the Rent Board within two

26   weeks following the expiration of the 45-day rescission period.  S.F. Admin Code

27   § 37.9E(h).  The Rent Board maintains a searchable database, publicly accessible at its

28   office, of the information in the agreements, and includes a copy of the agreement with

1   the identity of the tenant redacted.  Id. § 37.9E(i).  Plaintiffs contend that the Database

2   Provision violates landlords' rights to equal protection and/or due process, and privacy.

3   See Cplt ¶ 17.

4         *Penalty and Fee Provisions* – The Ordinance creates private rights of action

5   where landlords fail to provide disclosures or file buyout agreements, and establishes

6   penalties and awards of attorneys' fees in cases of successful enforcement.  S.F. Admin.

7   Code § 37.9E(k).  Plaintiffs allege that these penalty and fee provisions violate landlords'

8   rights to equal protection and/or due process because it makes the owner of the property

9   bear the burden of any departure from the Ordinance's rules.  See Cplt ¶ 16.

10        *The Condominium Conversion Provision* – The Ordinance provides that a

11  property will be ineligible for consideration for condominium conversion for ten years after

12  an owner or former owner enters into a buyout agreement with a senior, disabled, or

13  catastrophically ill tenant, or with two or more tenants in the same building.  S.F. Subd.

14  Code § 1396(e)(4).  Plaintiffs claim this provision interferes with landlords' right to settle

15  disputes and violates their rights to due process and/or equal protection.  See Cplt ¶¶ 15,

16  16.

17        CCSF filed an answer to the complaint on April 6, 2015, and now seeks judgment

18  on the pleadings.

19                              **DISCUSSION**

20  A.    Legal Standard

21        "After the pleadings are closed – but early enough not to delay trial – a party may

22  move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  A motion for judgment on

23  the pleadings "challenges the legal sufficiency of the opposing party's pleadings."

24  William W Schwarzer et al., Federal Civil Procedure Before Trial (2015 ed.) § 9:316.

25  Judgment on the pleadings is appropriate when the pleaded facts, accepted as true and

26  viewed in the light most favorable to the non-moving party, entitle the moving party to a

27  judgment as a matter of law.  Hoeft v. Tucson Unified Sch. Dist., 967 F.2d 1298, 1301

28  (9th Cir. 1992); see also Fleming v. Pickard, 581 F.3d 922, 925 (9th Cir. 2009).

United States District Court
Northern District of California

The legal standards governing Rules 12(c) and 12(b)(6) are "functionally identical," Calfasso, U.S. ex rel. v. General Dynamics C4 Sys., Inc., 637 F.3d 1047, 1054 n.4 (9th Cir. 2011), as both permit challenges directed at the legal sufficiency of the parties' allegations.  Thus, the standard articulated in Twombly/Iqbal with regard to Rule 12(b)(6) motions applies equally to a motion for judgment on the pleadings.  Chavez v. United States, 683 F.3d 1102, 1108-09 (9th Cir. 2012); Calfasso, 637 F.3d at 1054-55 & n.4.

Under that standard, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."  Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).  In addition, "a plaintiff's obligations to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations and quotations omitted); see also id. (allegations "must be enough to raise a right to relief above the speculative level").

B.    Defendant's Motion

CCSF argues that the court should grant judgment on the pleadings as to all claims asserted in the first cause of action.  In opposition, plaintiffs contend that they have adequately stated a claim under each of those theories.

1.    Violation of free speech rights

Plaintiffs allege that the Ordinance violates their First Amendment free speech rights by imposing restrictions on speech and by compelling speech.  They assert that the Ordinance imposes a prior restraint on owners' speech because it forbids them from speaking to tenants about possible buyouts until the owners have provided the required disclosures, and because it prohibits owners from speaking to any tenant who has not consented by signing the disclosure form.  They also assert that the Ordinance compels owners and their agents and managers to speak what the City dictates, as a condition of exercising their free speech rights.  See Cplt ¶ 14.

Freedom of speech is guaranteed under both the United States and California Constitutions.  The First Amendment to the United States Constitution, made applicable

United States District Court
Northern District of California

to state and local governments by the Fourteenth Amendment, provides in part that "Congress shall make no law abridging the freedom of speech." U.S. Const., 1st Amend. The California Constitution states, "Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right.   A law may not restrain or abridge liberty of speech or press." Cal. Const., art. I, § 2 (a).  The free speech provision in California's Constitution "is 'at least as broad' as and in some ways is broader than the comparable provision of the federal Constitution's First Amendment." Kasky v. Nike, Inc., 27 Cal. 4th 939, 958-59 (2002) (citations omitted); Baba v. Bd. of Sup'rs City & Cnty. of S.F., 124 Cal. App. 4th 504, 513 (2004).

　　　　　　　　　　　a.　　　Restrictions on speech

　　　　　Plaintiffs allege that the Ordinance imposes a prior restraint on speech, and also operates to restrict or limit speech.  Cplt ¶ 14.  The term "prior restraint" is used "to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur." Alexander v. United States, 509 U.S. 544, 549 (1993) (citation omitted).  "Prior restraints on speech are disfavored and carry a heavy presumption of invalidity." Long Beach Area Peace Network v. City of Long Beach, 574 F.3d 1011, 1023 (9th Cir. 2009), quoted in Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc., 742 F.3d 414, 430 (9th Cir. 2014).  Temporary restraining orders and permanent injunctions – i.e., court orders that actually forbid speech activities – are classic examples of true prior restraints.  See Alexander, 509 U.S. at 549-50, (citing Near v. Minn. ex rel. Olson, 283 U.S. 697 (1931); Org. for a Better Austin v. Keefe, 402 U.S. 415 (1971); Vance v. Universal Amusement Co., 445 U.S. 308 (1980) (per curiam)).

　　　　　Under an alternative version of the doctrine, a prior restraint is a law that "condition[s] the free exercise of First Amendment rights on the unbridled discretion of government officials." Desert Outdoor Adver. v. City of Moreno Valley, 103 F.3d 814, 818 (9th Cir. 1996) (internal quotation marks omitted).  "Unbridled discretion challenges typically arise when discretion is delegated to an administrator, police officer, or other

executive official," as opposed to a legislative body. Long Beach Area Peace Network, 574 F.3d at 1042. Absent standards controlling the exercise of discretion, there is a danger that government officials may determine "who may speak and who may not based upon the content of the speech or viewpoint of the speaker." City of Lakewood v. Plain Dealer Pub. Co., 486 U.S. 750, 763-64 (1987). Thus, "[r]egulations must contain narrow, objective, and definite standards to guide the licensing authority and must require the official to provide an explanation for his decision." Long Beach Area Peace Network, 574 F.3d at 1025 (quotations and citations omitted); see also Seattle Affiliate of the Oct. 22nd Coal. to Stop Police Brutality v. City of Seattle, 550 F.3d 788, 798 (9th Cir. 2008).

CCSF argues that this part of the claim should be dismissed because none of the provisions plaintiffs challenge involve any meaningful restraint. CCSF contends that neither the disclosure nor the requirement that the landlord certify to the Rent Board that he/she/it has provided the disclosure constitutes a restraint. CCSF argues that the challenged provisions are entirely different from restrictions that prohibit speech altogether or subject the content of speech to official approval.

In opposition, plaintiffs assert that the restriction on what landlords can say to tenants is more than a "disclosure provision," because it prohibits landlord speech with regard to buyouts until the tenant signs and returns the disclosure form to the landlord, resulting in an effective veto of the landlord's speech. Plaintiffs contend that because the Ordinance permits tenants to file civil actions against landlords for failure to comply with the disclosure requirements or the requirements pertaining to buyout agreements, no rational landlord would undertake such a negotiation without first obtaining the tenant's signature, and the Ordinance thus operates as prior restraint on speech.

The court finds, however, that nothing in the Ordinance either forbids particular speech or speech activities, thereby imposing a true restraint on future speech, or conditions speech or speech activities upon the unbridled discretion of government officials. Nor does the Ordinance condition the landlord's right to speak on obtaining the

1    tenant's signature.[4]   The provision at issue – the requirement that the landlord not

2    discuss a potential buyout until he/she/it has given the tenant the required disclosure and

3    certified to the City that such disclosure has been provided – does not preclude or limit

4    any speech after the minimal disclosure/certification requirement has been met.

5         Moreover, there is no government discretion involved.  Once the landlord provides

6    the disclosures and files the certification with the Rent Board – which can be

7    accomplished with minimal effort – the landlord and the tenant may engage in buyout

8    negotiations without limitation.  In short, the requirements contained in the Ordinance are

9    entirely different from restrictions that prohibit speech altogether or subject the content of

10   speech to official approval.  Thus, the Ordinance does not impose any prior restraint on

11   speech under either variation.

12        With regard to the requirement that the landlord not discuss a buyout until the

13   disclosure/certification requirement has been met, CCSF appears to concede that this

14   constitutes a species of restriction on speech.  Where the parties differ is on what level of

15   scrutiny should govern the court's determination of the constitutionality of that restriction.

16   CCSF argues that this restriction should be evaluated under the intermediate scrutiny

17   standard applicable to commercial speech, as set forth in Central Hudson Gas & Elec.

18   Corp. v. Pub. Serv. Comm'n, 447 U.S. 557 (1980).

19        Plaintiffs, on the other hand, assert that the Ordinance is content-based and

20   regulates more than purely commercial speech, and that under Reed v. Town of Gilbert,

21   135 S.Ct. 2218 (2015), it is thus subject to strict scrutiny.  They claim the Ordinance is

22

23   ───────────────

24   [4]   The Ordinance provides that prior to commencing buyout negotiations, the landlord
     must provide the tenant with disclosures on a form authorized by the Rent Board, which
25   must include "a space for each tenant to sign and write the date the landlord provided the
     tenant with the disclosure."  S.F. Admin Code § 37.9E(d)(10).  While the landlord is
26   required to certify to the Rent Board that he/she/it provided the tenant with the disclosure
     required by subsection (d), id. § 37.9E(e)(4), there is no requirement that the landlord
27   certify that the tenant signed the form, and no prohibition on commencing buyout
     negotiations if the tenant refuses to sign.  The requirement that the landlord "retain a
28   copy of each signed disclosure form for five years," id. § 37.9E(d), does not condition the
     right to commence buyout negotiations on the tenant having signed the form.

1    content-based because the restriction on speech is limited to the subject of possible

2    buyouts, and that even if the Ordinance regulates some commercial speech, that speech

3    is "inexplicably intertwined" with non-commercial speech.

4         Plaintiffs assert that having an economic motivation for communicating is

5    insufficient by itself to turn communications into commercial speech, and that unlike an

6    ordinary commercial transaction in which goods or services are sold, a transaction that

7    involves a buyout discussion between a landlord and a tenant also involves

8    communication regarding their relationship and the ongoing terms of the arrangement.

9    Plaintiffs argue that given the "complex, personal and permanent" connection between

10   landlords and tenants, any discussion of buyout terms would be "inextricably intertwined"

11   with "fully protected speech."  Thus, they assert, such negotiations between landlords

12   and tenants are not purely commercial speech, but rather are fully-protected speech

13   subject to strict scrutiny.

14        As noted above, the only regulated speech identified in the complaint is the

15   speech of the landlord or his agent involving an offer of payment to the tenant to vacate

16   the premises, and the sole restriction on that speech is that the landlord may not enter

17   into a buyout negotiation until he/she/it has first provided the disclosures to the tenant

18   and so certified to the Rent Board.  A discussion between a landlord and a tenant about

19   the possibility of entering into a buyout agreement is commercial speech, as it relates

20   solely to the economic interests of the parties and does no more than propose a

21   commercial transaction.  See Am. Acad. of Pain Mgmt. v. Joseph, 353 F.3d 1099, 1106

22   (9th Cir. 2004) (citing Central Hudson, 447 U.S. at 561; Va. State Bd. of Pharmacy v. Va.

23   Citizens Consumer Council, Inc., 425 U.S. 748, 752 (1976)); see also See Bd. of Trs. of

24   State Univ. of N.Y. v. Fox, 492 U.S. 469, 473-74 (1989).  Whatever particular relationship

25   a tenant may have with his/her landlord, it cannot transform a conversation between a

26   landlord and a tenant concerning a possible buyout into something other than a

27   discussion proposing a commercial transaction.

28        Commercial speech enjoys "a limited measure of protection, commensurate with

United States District Court
Northern District of California

1   its subordinate position in the scale of First Amendment values,' and is subject to 'modes

2   of regulation that might be impermissible in the realm of noncommercial expression.'"

3   Fox, 492 U.S. at 477 (citation omitted).  Commercial speech is distinguished from

4   noncommercial speech in the same way whether the claims arise under the federal or

5   state constitution.  Kasky, 27 Cal. 4th at 969 (2002); see also Leoni v. State Bar, 39

6   Cal.3d 609, 614 n.2 (1985).

7   Reed is inapplicable to the present case, for several reasons, including that it does

8   not concern commercial speech.  Restrictions on commercial speech are evaluated

9   under Central Hudson, using a four-part test:

> (1) [I]f the communication is neither misleading nor related to unlawful activity, then it merits First Amendment scrutiny as a threshold matter; in order for the restriction to withstand such scrutiny, (2) the State must assert a substantial interest to be achieved by restrictions on commercial speech; (3) the restriction must directly advance the state interest involved; and (4) it must not be more extensive than is necessary to serve that interest.

World Wide Rush v. World Wide Rush, LLC v. City of L.A., 606 F.3d 676, 684 (9th Cir.

2010) (citations and quotation marks omitted) (citing Central Hudson, 447 U.S. at 564-

66).

CCSF bears the burden of establishing that the Ordinance meets the Central

Hudson elements.  See Desert Outdoor Adver., 103 F.3d at 819.  CCSF argues that the

communication is neither misleading nor related to unlawful activity.  CCSF also asserts

that the City's interest in protecting tenants is substantial, particularly given the severity of

the housing crisis and the vulnerability of tenants to displacement where inadequate

alternatives exist.

CCSF argues that both the Notification Provision and the Disclosure Provision

advance the stated interests, as they make it more likely that tenants who enter into

buyout agreements will do so with a full understanding of their rights, and also assist the

City in understanding the prevalence of buyout offers and the extent to which tenants

accept or decline them.

Finally, CCSF argues that any burden imposed by the Notification Provision is

United States District Court
Northern District of California

1  minimal, as it does not give the City any control over the landlord's communications or

2  subject them to government review, and works no meaningful delay in the landlord's

3  ability to engage in buyout negotiations.  As such, CCSF contends, it is narrowly tailored

4  to the City's interest in protecting tenants by ensuring that they understand their rights

5  and have a meaningful opportunity to receive advice and information.

6       In opposition, plaintiffs do not dispute that the speech at issue concerns lawful

7  activity (the landlord's proposal to buy out the tenant) and is not inherently misleading.

8  However, they contend that the restrictions on speech do not serve a "substantial"

9  government interest.  They argue that under Edenfield v. Fane, 507 U.S. 761 (1993), the

10  interest must be one that is identified by the legislative body, and must reflect a harm that

11  is real, not speculative.  Plaintiffs assert that the restrictions on buyout negotiations do

12  not meet this part of the test, because the Ordinance states on its face that the City "lacks

13  comprehensive information about the number, location, and terms of buyout

14  agreements[,]" and that "[t]his dearth of information precludes the City from

15  understanding the true level of tenant displacement in San Francisco."

16       Instead, plaintiffs assert, the Board of Supervisors relied on "anecdotal" evidence

17  to justify the content-based restrictions imposed by the Ordinance:  "Anecdotal evidence

18  indicates that many buyout negotiations are not conducted at arms-length, and landlords

19  sometimes employ high-pressure tactics and intimidation to induce tenants to sign the

20  agreements. Some landlords threaten tenants with eviction if they do not accept the

21  terms of the buyout."  S.F. Admin. Code § 37.9E(a).  Plaintiffs argue that such

22  unspecified "anecdotal evidence" is not sufficient to sustain the City's burden of showing

23  that the harms it recites are real and that its restriction will in fact alleviate them to a

24  material degree, as required under Edenfield.

25       Plaintiffs compare the facts in this case to those in Sorrell v. IMS Health Inc., 131

26  S. Ct. 2653 (2011), where the Supreme Court struck down a Vermont law restricting the

27  sale or disclosure of prescriber-identifying information to persons or entities such as

28  pharmaceutical manufacturers for marketing to doctors.  See id. at 2662-63.  The law

United States District Court
Northern District of California

1  allowed pharmacies to share the same information with anyone else for any purpose

2  other than marketing.  Id.  The Court found that the law imposed an impermissible burden

3  on speech, whether a commercial speech inquiry or a stricter form of judicial scrutiny was

4  applied.  Id. at 2667-78

5       In evaluating the Central Hudson factors, the Court found no clear "fit between the

6  legislature's ends and the means chosen to accomplish those ends."  Id. at 2668 (citation

7  omitted).  Among the stated goals of the law was the need to protect doctors from

8  "harassing sales behaviors."  Id. at 2669.  The Court found that the broad content-based

9  rule was not necessary to prevent "harassment" of doctors because a doctor could simply

10  decline to meet with a pharmaceutical representative.  Id. at 2669-70.  Moreover, while

11  the Vermont Legislature found "some" doctors experienced "an undesired increasing in

12  the aggressiveness of pharmaceutical sales representatives" and "a few" doctors

13  "reported that they felt coerced and harassed," the Court was not persuaded that concern

14  for "a few" doctors who may have felt "coerced and harassed" by pharmaceutical

15  marketers could sustain such a broad content-based rule.  Id. at 2669.  Similarly, plaintiffs

16  assert, while CCSF may be concerned for the welfare of tenants who enter into buyout

17  agreements, it is not permissible for CCSF to impose content-based regulations on

18  speech when it "lacks comprehensive information" about such transactions.

19       Plaintiffs also argue that CCSF has failed to carry its burden of showing that the

20  alleged restriction directly advances the interests identified by the Ordinance (which

21  plaintiffs identify as "preventing fraud or intimidation") because CCSF has not

22  demonstrated that the harms it recites are real or that the restriction imposed by the

23  Ordinance will in fact alleviate those harms.  Plaintiffs claim that CCSF is "pretending"

24  that there is no restriction on speech, and "devotes all of its time merely to showing that

25  disclosures could serve [the stated] purposes."  However, plaintiffs assert, disclosures

26  could be required without prohibiting landlords from speaking to their tenants about

27  possible buyouts for an indefinite period of time.

28       Additionally, plaintiffs contend, the restriction on initiating buyout negotiations until

1    after the landlord has issued the disclosures and filed the certification is "overbroad" as it

2    makes no distinctions on the basis of the time, place, or manner of speech, and

3    empowers a tenant, by refusing to sign the disclosure form, to deny a landlord the right

4    ever to speak regarding the possibility of a buyout.  Plaintiffs claim that absent the

5    tenant's signature, landlords may not ever contact tenants with an offer to vacate the

6    premises by any means or in any location.

7          The court finds that CCSF has met its burden of showing that the Ordinance

8    meets that Central Hudson test.  First, the speech is protected because it concerns lawful

9    activity and is not misleading.

10          Second, the interests set forth in the Ordinance are substantial – to increase the

11    fairness of the buyout negotiations and agreements; to reduce the likelihood that tenants

12    will be pressured to accept buyouts without sufficient time to consult with a tenants' rights

13    specialist; and to help the City collect data about buyout agreements in order to

14    understand the true level of tenant displacement.  See S.F. Admin Code § 37.9E(a).

15          As for plaintiffs' assertion that the City cannot show that the problems it seeks to

16    resolve are "real" because the Ordinance cites anecdotal evidence and acknowledges a

17    lack of data resulting from lack of buyout regulation in the past, the Supreme Court has

18    indicated that speech restrictions can be justified "by reference to studies and anecdotes

19    pertaining to different locales altogether," and essentially that there is nothing that

20    prohibits the justification from being based on anecdotal evidence.  See Florida Bar v.

21    Went For It, Inc., 515 U.S. 618, 628 (1995).  Certainly nothing in the Sorrell decision

22    supports plaintiffs' position.

23          Moreover, Sorrell is distinguishable, as it involved a law that prohibited the

24    disclosure of pharmacy records to pharmaceutical manufacturers, who wanted to use

25    them for marketing purposes, but allowed disclosure to anyone else, whereas the

26    restriction in the present case is not an absolute prohibition on speech, but simply a

27    condition that must be fulfilled before the speech can take place.  Once the landlord has

28    provided the tenant with the required disclosures, and has provided the certification to the

United States District Court
Northern District of California

14

Rent Board, the Ordinance imposes no further restrictions on the landlord's speech, content-based or otherwise.

Third, the Ordinance directly advances the City's interests. For example, the Notification Provision encourages compliance with the Disclosure Provision itself, because it requires landlords to certify under penalty of perjury at the outset that the disclosure was provided, and it also establishes a contemporaneous record of compliance that would not otherwise exist should the tenant decline to sign and date the disclosure form. Further, because the information provided under the Notification Provision is publicly available at the Rent Board, it gives the City and tenant rights' organizations a tool to identify potential failures to file buyout agreements, thereby encouraging compliance with the filing requirement and facilitating potential enforcement actions. Because the filing of agreements is essential to the utility of the database, the Notification Provision advances the City's interests in its creation and maintenance. In addition, it assists the City in understanding the prevalence of buyout offers, and the extent to which tenants decline them.

Fourth, the Ordinance is narrowly tailored. Plaintiffs contend that the Ordinance is overbroad because the City already has laws that prohibit "fraud, intimidation or coercion" to induce a tenant to vacate or that prohibit payment of offers to vacate that are "accompanied by threats or intimidation." Were the City's only interest in avoiding coercion and high-pressure tactics, this might be true. However, the principal stated purpose of the Ordinance is to "improve the fairness of buyout negotiations and agreements" by ensuring that tenants are informed about their rights and that they have an opportunity to consult with a tenants' rights specialist.

Plaintiffs also assert that the Ordinance is overbroad because it allows a tenant – by virtue of simply refusing to sign the disclosure form – to deny a landlord the right to ever speak regarding the possibility of a buyout. This argument is also without merit. As explained above, the Ordinance does not condition the landlord's right to speak on obtaining the tenant's signature.

1       Apart from this, the court finds that the Ordinance is narrowly tailored because the

2 landlord is prohibited from speaking to the tenant only until he/she/it has provided the

3 disclosures and so certified to the City.  Reasonably construed, that provision describes a

4 process that could take less than half a day.  In addition to being extremely limited, the

5 restriction neither gives the City any control over the content of the landlord's

6 communications, nor works any meaningful delay in the landlord's ability to engage in

7 buyout negotiations.

8                         b.      Compelled speech

9       Plaintiffs allege that the Ordinance compels certain state-prescribed speech from

10 the landlord to the tenant.  Specifically, plaintiffs point to the requirement that the landlord

11 provide the disclosures, and certify to the Rent Board that he/she/it has done so.

12 Plaintiffs allege that this requirement compels owners and their agents and managers to

13 "speak what the government (Rent Board) dictates as a condition of exercising their free

14 speech rights."  Cplt ¶ 14.

15       Where a law requires factual disclosures in the context of commercial speech, the

16 speaker has only a "minimal" interest in not providing the information, and the

17 requirement furthers, rather than impedes, the free flow of information that the First

18 Amendment protects.  Thus, such a requirement need only be reasonably related to the

19 government's interest in providing the information.  See Zauderer v. Office of Disciplinary

20 Counsel of Supreme Ct. of Ohio, 471 U.S. 626, 651 (1985); see also Environmental Def.

21 Ctr., Inc. v. U.S. E.P.A., 344 F.3d 832, 849 (9th Cir. 2003).

22       CCSF argues that under the standard articulated in Zauderer, plaintiffs have no

23 claim under the "compelled speech" doctrine.  CCSF contends that the form that

24 landlords are required to provide to tenants recites purely factual information regarding

25 the Ordinance and regarding tenants' rights, and that this requirement does not constitute

26 a mandate that landlords affirm any state-sanctioned opinion.

27       CCSF asserts further that under rational basis review, the Disclosure Provision

28 enjoys a strong presumption of validity, and must be upheld so long as it bears some

United States District Court
Northern District of California

rational relationship to a conceivable legitimate state purpose.  CCSF contends that the Disclosure Provision is rationally related to the City's legitimate interests in improving the fairness of buyout negotiations by helping to ensure that tenants do not enter into them without understanding their rights and without meaningful opportunities to obtain information and assistance.

In opposition, plaintiffs assert that in requiring the landlord to provide the tenant with the disclosures, the Ordinance compels the landlord to convey a City-sanctioned message to that tenant.  Plaintiffs contend that under Riley v. Nat'l Fed'n of the Blind, 487 U.S. 781, 795 (1988), "[m]andating speech that a speaker would not otherwise make necessarily alters the content of the speech," and that speech compelled by the government is analyzed as a content-based restriction.

Plaintiffs concede that Zauderer prescribes rational basis review for laws that require "purely factual and uncontroversial information" to be provided to consumers, but they argue that the ruling is limited to the context of commercial speech.  They argue that "forced disclosures" in connection with noncommercial speech, or commercial speech that is "inextricably intertwined" with noncommercial speech remain subject to the full protection of the First Amendment, and to strict scrutiny.  Plaintiffs reiterate that the "ongoing existing relationship between landlords and tenants" takes speech between those parties out of the traditional "commercial speech" context and into the realm of fully protected speech.

Plaintiffs contend that while Zauderer sanctioned the dissemination of "purely factual and uncontroversial information" to consumers, id., 474 U.S. at 626, it did not require them to be publicly identified or associated with another's hostile message.  Here, plaintiffs argue, the Ordinance requires landlords to provide a tenant with a list of "tenant's rights" organizations, which plaintiffs claim effectively associates the landlord with the City's endorsement of organizations that plaintiffs believe are inherently adversarial to landlord interests.  Plaintiffs assert that the Ordinance is far more like the requirement at issue in Pacific Gas & Elec. Co. v. Public Utilities Comm'n, 475 U.S. 1

United States District Court
Northern District of California

1  (1986), where the Court struck down a requirement by the PUC that required PG&E to

2  apportion space in its billing envelopes for inserts by a public consumer group whose

3  views were opposed to those of PG&E.

4       The compelled disclosures in this case constitute purely factual information

5  regarding the Ordinance and tenants' legal rights, and do not communicate any opinion

6  or viewpoint with regard to buyout discussions or buyout agreements, including any

7  suggestion that buyouts should be considered beneficial or harmful.  Riley is

8  distinguishable, as the law in that case imposed a requirement that professional

9  fundraisers disclose to potential donors, before an appeal for funds, the percentage of

10  charitable contributions collected during the previous 12 months that were actually turned

11  over to charity.  Id., 487 U.S. at 795.  The Court found that charitable solicitations, even if

12  considered commercial, are inextricably intertwined with fully protected informative and/or

13  persuasive speech, and for that reason applied the test for fully protected speech.  Id. at

14  796.  Here, by contrast, whatever else landlords and tenants may discuss, it is entirely

15  feasible to engage in a buyout negotiation without also engaging in other fully protected

16  speech.

17       Moreover, in requiring that the disclosure form include contact information for

18  tenants' rights organizations, the Ordinance does not require the landlord to be publicly

19  identified or associated with "a hostile third party's message."  The challenged law in the

20  Pacific Gas & Elec. case required PG&E to include in billing envelopes copies of letters

21  from third parties with views hostile to PG&E.  The Court found that this requirement

22  violated the First Amendment, because PG&E would effectively be forced "either to

23  appear to agree with [the third parties'] views or to respond," and it distinguished

24  Zauderer on the ground that PG&E was forced to "carry the messages of third parties,

25  where the messages themselves are biased against or are expressly contrary to the

26  corporation's views."  Id., 475 U.S. at 14-15 & n.12.  Here, however, the landlords are not

27  required to carry any messages from tenants' rights organizations – just names and

28  contact information – and the disclosure form does not in any way endorse the messages

United States District Court
Northern District of California

1   of those organizations.

2        Under Zauderer, the appropriate level of scrutiny is rational basis, and the

3   Ordinance easily satisfies that test, as the requirement that landlords provide tenants with

4   the disclosure form is reasonably related to the City's interest in providing that

5   information.[5]  Further, the Notification Provision is a simple filing requirement that does

6   not subject the landlord's speech to any government approval, and the requirement is

7   satisfied once the single one-page declaration form is filed.  This requirement does not

8   burden or meaningfully delay the landlord's ability to engage in buyout negotiations.

9        2.      Violation of right to settle disputes in good faith

10        Plaintiffs allege that the Condominium Conversion Provision "impairs [their] right

11  . . . to enter into voluntary settlement of disputes, and punishes owners for entering into

12  voluntary, mutually-beneficial, wholly legal contracts with their tenants[;]" and "thus

13  illegally impairs and interferes with rights inherent in their rental agreements to settle

14  disputes in good faith."  See Cplt ¶ 15.

15        CCSF argues that there is no constitutional basis for this vaguely articulated

16  "right," but that even if it does exist, plaintiffs have failed to allege facts sufficient to state

17  a viable claim.  CCSF asserts that nothing in the Condominium Conversion Provision

18  prevents landlords and tenants from settling any hypothesized dispute by entering into a

19  buyout agreement on mutually acceptable terms, and contends that any temporal

20  restriction on an owner's ability to engage in a condominium conversion after particular

21  buyouts have occurred at a property is not an interference with the owner's right to settle

22  a dispute by entering into a buyout agreement with a tenant.

23        CCSF also contends that the regulation of condominium conversions lies within a

24  municipality's police power, and that it need only be reasonably related to a legitimate

25  government purpose.  Here, CCSF notes, the restrictions are limited to buyouts involving

26

27  _____
    [5]   Moreover, as explained above, the Ordinance survives even intermediate scrutiny

28  under Central Hudson.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    senior, disabled, or catastrophically ill tenants (who can face greater hurdles in securing

2    new housing), or multiple buyouts within the same building (which could have a greater

3    impact on the availability of affordable rental housing).  CCSF asserts that the

4    Condominium Conversion Provision passes muster under rational basis review, and a

5    provision that must be upheld as a valid exercise of the City's police power does not

6    become unlawful simply because it may reduce one potential incentive for an owner to

7    regain possession through a buyout agreement.

8         In their opposition, plaintiffs recharacterize this claim.  They now assert that the

9    Condominium Conversion Project violates the "constitutional right to contract for lawful

10   purposes."  Plaintiffs contend that this "right to contract" includes the right to amend

11   existing contracts.  In support, they cite California Civil Code § 1698(a) ("[a] contract in

12   writing may be modified by a contract in writing").  They assert that prior to the enactment

13   of the Ordinance, landlords and tenants had an "unrestricted right" to voluntarily

14   renegotiate their leases so as to terminate a tenancy upon mutually agreeable terms, but

15   that CCSF has severely and arbitrarily burdened that "right" by imposing a significant

16   "penalty" on landlords who exercise their right to buy out tenants.  Plaintiffs also contend

17   that penalizing landlords who have complied with the Ordinance's requirements interferes

18   with the ability of tenants to engage in lawful contracting, by discouraging landlords from

19   entering buyout agreements tenants may desire.

20        Plaintiffs' attempted reformulation of the asserted "right" does not save this claim,

21   because the Constitution protects freedom of contract only by limiting the states' powers

22   to modify or affect contracts already formed.  See McCarthy v. Mayo, 827 F.2d 1310,

23   1315 (9th Cir. 1987); see also Oceanside Mobilehome Park Owners' Assn. v. City of

24   Oceanside, 157 Cal. App. 3d 887, 908-09 (1984) (contract clause prohibits only statutes

25   impairing existing contracts).  By contrast, the Condominium Conversion Provision

26   applies only to buyout agreements signed after the Ordinance's enactment.

27        Moreover, "[t]he constitutional principle of inviolability of contracts is subject to the

28   one great qualification that contractual rights, like all other forms of property, are held

subject to the exercise of police power." Briggs v. City of L.A., 154 Cal. App. 2d 642, 645 (1957).  "California courts have consistently treated condominium conversion regulation as a legitimate exercise of the police power." Leavenworth Props. v. City & Cnty. of S.F., 189 Cal. App. 3d 986, 990-91 (1987).  The Subdivision Map Act ("SMA"), Cal. Gov't Code §§ 66410 et seq., is "the primary regulatory control" governing the subdivision of real property in California. Hill v. City of Clovis, 80 Cal. App. 4th 438, 445 (2000). Condominium projects are expressly defined as subdivisions within the meaning of the SMA.  Cal. Gov't Code § 66424.  The SMA vests the "[r]egulation and control of the design and improvement of subdivisions" in the legislative bodies of local governments which must promulgate ordinances on the subject. Id. § 66411.  Under the SMA, local governments possess the powers necessary to set condominium conversion restrictions. See Soderling v. City of Santa Monica, 142 Cal. App. 3d 501, 507-08 (1983).

A municipality's police power includes the ability to limit an economic incentive to engage in a transaction – such as condominium conversion – that it believes poses a risk of harming particularly vulnerable tenants or has a more significant impact on the availability of rental housing. See Griffin Dev. Co. v. City of Oxnard, 39 Cal. 3d 256, 262-66 (1985).  Such a regulation need only be reasonably related to a legitimate government purpose. Id.  The exercise of this police power does not violate any constitutional right to contract, and plaintiffs have cited no authority for the proposition that the right to contract under either the federal or state constitution prohibits a government from enacting prospective legislation, otherwise concededly within its legitimate power, if it diminishes in any way the economic incentives to engage in a particular transaction.

A limit on a landlord's ability to convert a rental unit into a condominium plainly does not interfere with the landlord's ability either to "settle disputes in good faith" or to "contract for lawful purposes."  With or without the limits on condominium conversion, the landlord still has the right to negotiate a buyout with a tenant.  What plaintiffs appear to be objecting to is the imposition of a limit on a hypothetical possibility of condominium

conversion.[6]  Apart from the fact that it is questionable that plaintiffs have standing to raise such a claim absent an allegation of actual injury, the City already has limits on condominium conversions, and is legally entitled to impose such limits.

    3.    Violation of equal protection and due process rights

Plaintiffs allege that the Ordinance violates their rights to equal protection and due process.[7]  They assert that the Ordinance prohibits an owner from speaking about a buyout without a tenant's written consent; punishes an owner who has entered into a buyout agreement by barring condominium conversions in the building for ten years, with no similar penalty on the tenant; grants a tenant the power to unilaterally rescind a buyout agreement for 45 days after it is entered into, but grants an owner no similar power; requires the owner to file the buyout agreement with the Rent Board and to disclose the identity of all persons with decision making authority for the owner, and commands that this information be published on the Rent Board's web site, but directs that any tenant information be redacted and not published; and makes the owner bear the burden of any departure from the Ordinance's elaborate rules.  See Cplt ¶ 16.

The Equal Protection Clause of the Fourteenth Amendment requires that persons who are similarly situated be treated alike.  City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985); Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008).  A plaintiff may state an equal protection claim by alleging facts showing that the defendant

---

[6]  San Francisco provides for an annual limitation on the number of units that may be converted to condominiums in a given year, and imposes other restrictions on the condominium conversion application process.  See generally S.F. Subdivision Code §§ 1301, et seq.

[7]  Equal protection and due process rights are analyzed the same way under federal and state constitutions.  See Safeway Inc. v. City & Cnty. of S.F., 797 F.Supp. 2d 964, 971 (N.D. Cal. 2011); Habitat Tr. for Wildlife, Inc. v. City of Rancho Cucamonga, 175 Cal. App. 4th 1306, 1323 (2009).  Here, the complaint does not distinguish between equal protection and due process, and  pleads no facts in support of a due process claim, although the analysis applied to the two claims is similar.  Thus, a municipal act that neither utilizes a suspect classification nor draws distinctions among individuals that implicate fundamental rights will violate substantive due process rights when it is shown that the action is not "rationally related to a legitimate governmental purpose."  Richardson v. City & Cnty. of Honolulu, 124 F.3d 1150, 1162 (9th Cir. 1997).  Here, the court has analyzed the claim as an equal protection claim.

United States District Court
Northern District of California

discriminated against him/her based on membership in a protected class, Comm. Concerning Cmty. Improvement v. City of Modesto, 583 F.3d 690, 702-03 (9th Cir. 2009), or that similarly situated individuals were intentionally treated differently, Engquist v. Oregon Dep't of Agr., 553 U.S. 591, 601-02 (2008).

The first inquiry in the equal protection analysis is whether the legislation at issue "operates to the disadvantage of some suspect class or impinges upon a fundamental right explicitly or implicitly protected by the Constitution, thereby requiring strict judicial scrutiny." San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 17 (1973); see also Nordlinger v. Hahn, 505 U.S. 1, 10 (1992). If strict scrutiny is applied, the court will strike down the legislation unless the classification drawn by the legislation is "suitably tailored to serve a compelling state interest." City of Cleburne, 473 U.S. at 440. If strict scrutiny does not apply, the court will presume the challenged classification to be constitutional so long as the classification is rationally related to a legitimate governmental interest. Id.; see also Nordlinger, 505 U.S. at 11-12.

CCSF argues that plaintiffs have asserted no viable basis for application of strict scrutiny, and that each of the challenged Ordinance provisions is rationally related to a legitimate government interest. First, CCSF contends that strict scrutiny does not apply because the landlord plaintiffs are not a protected class, and the allegations of the complaint do not establish the infringement of any fundamental right.

In opposition, plaintiffs argue that the Ordinance "implicates equal protection concerns" because it applies to the speech of landlords and tenants and because it subjects the "fundamental rights" of one party to a bilateral contract – i.e., landlords – to unique burdens that are not placed on the other party. Plaintiffs also assert that the fact that the Ordinance requires redaction of tenants' identifying information but not landlords' sensitive and financial information triggers strict scrutiny (under the California Constitution's equal protection clause), because the right to privacy is a fundamental right enshrined in the California Constitution, and government may not discriminate among its citizens in granting privacy rights without a compelling justification.

1    Because freedom of speech is a fundamental right, the U.S. Supreme Court has

2  on occasion found that content-based discrimination is not rationally related to a

3  legitimate government interest because it violates the First Amendment, thus fusing the

4  First Amendment into the Equal Protection Clause, but it has made clear that the First

5  Amendment underlies its analysis.  See Police Dept. of Chicago v. Mosley, 408 U.S. 92,

6  95 (1972), cited in R.A.V. v. City of St. Paul, Minn., 505 U.S. 377, 384 n.4 (1992).  Here,

7  however, as stated above with regard to the analysis of the First Amendment freedom of

8  speech claims, the Ordinance does not impose a severe burden on the landlords'

9  freedom of speech, and indeed does not violate plaintiffs' rights of speech under any

10  level of review.

11    Nor, as explained in more detail below, does the Ordinance violate plaintiffs' right

12  to privacy.  As for plaintiffs' argument that because the Ordinance requires the redaction

13  of tenant, but not landlord, names, their claim of violation of the right of privacy should

14  also receive strict scrutiny, plaintiffs have ignored the fact that the landlord's ownership of

15  the property is already a matter of public record, whereas the identity of the tenant is not.

16  Thus, to redact the name of the tenant in a buyout agreement but not the name of the

17  landlord is in accord with the practice already being followed.

18    Thus, because the plaintiff landlords are not a protected class, see Sylvia

19  Landfield Tr. v. City of L.A., 729 F.3d 1189, 1191 (9th Cir. 2013) (applying rational basis

20  standard to substantive due process claim), and because the Ordinance does not infringe

21  on any fundamental right, plaintiffs' equal protection challenge must be considered under

22  rational basis review, which requires only that any classification rationally further a

23  legitimate state interest.  See Nordlinger, 505 U.S. at 10.  Governmental action is

24  rationally related to a legitimate goal unless the action is "clearly arbitrary and

25  unreasonable, having no substantial relation to the public health, safety, morals, or

26  general welfare."  Lebbos v. Judges of Sup. Ct., Santa Clara Cnty., 883 F.2d 810, 818

27  (9th Cir. 1989) (citation and quotation omitted).

28    CCSF argues that landlords and tenants are not similarly situated, and that in any

United States District Court
Northern District of California

24

1    event, the challenged provisions are rationally related to legitimate governmental

2    interests.  First, with regard to the claim that the Ordinance prohibits an owner from even

3    speaking about a buyout without a tenant's written consent, CCSF reiterates that the

4    Ordinance does not condition the right to speak on the tenant's signature.  Moreover,

5    CCSF asserts, the Disclosure Provision presents no equal protection issue because it

6    rationally distinguishes between landlords and tenants based on disparities in bargaining

7    position and based on landlords' unique incentives to pressure tenants into accepting

8    buyouts, including the avoidance of restrictions and regulations that apply to no-fault

9    evictions.

10           Second, with regard to the claim that the Ordinance punishes an owner who has

11   entered into a buyout agreement by barring condominium conversions in the building for

12   ten years, with no similar penalty on the tenant, CCSF argues that owners and tenants

13   are not similarly situated with respect to restrictions on condominium conversions.  CCSF

14   contends that the restrictions apply at the property where the buyout occurred, and it is

15   the property owner who is likely to be motivated by the financial benefits of condominium

16   conversions when they seek to induce tenants to vacate.  Moreover, CCSF argues,

17   restrictions on condominium conversions are reasonably related to the City's interest in

18   maintaining rental housing inventory, as the use of buyout agreements to avoid the

19   regulations on condominium conversions that apply in the context of no-fault evictions

20   can undermine the protections those regulations provide.

21           Third, with regard to the claim that the Ordinance grants a tenant 45 days to

22   unilaterally rescind a buyout agreement, but grants an owner no similar power, CCSF

23   contends that landlords and tenants are also not similarly situated with regard to the

24   purposes of this law.  CCSF asserts that the Rescission Provision is reasonably related

25   to the City's legitimate interest in protecting tenants by remediating disparities in

26   bargaining position and allowing tenants sufficient time to consult with a tenants' rights

27   specialist.

28           Fourth, with regard to the claim that the Ordinance requires that the Owner's

United States District Court
Northern District of California

identifying information (including the identity of persons with decision-making authority) be made public, but directs that tenant information be redacted, CCSF argues that the disclosure of persons with decision-making authority for the landlord in terms of the buyout agreement is required to be made only to the tenant, not to the public at large, and is required only when he landlord is an entity rather than a natural person.  CCSF contends that this requirement is rationally related to the City's interest in protecting tenants by increasing the fairness of buyout negotiations and agreements.  CCSF asserts that no valid purpose is served by concealing from tenants the identity of those persons with whom they are negotiating and who have decision-making authority.

CCSF asserts further that the actual notice on which this information is provided to the tenant is not filed with the Rent Board, and that information from buyout agreements is not published on the Rent Board's website, but rather is simply made available at the Rent Board's office.  CCSF argues that the establishment of a database that tenants may use to research buyout agreements is likewise reasonably related to the City's interest in increasing the fairness of buyout negotiations and agreements.  Similarly, CCSF asserts, the requirement that the landlord file the buyout agreement with the Rent Board is reasonably related to the City's interest in creating the database, and in collecting data to understand the level of tenant displacement and inform the City's future policymaking.  CCSF contends that the collection of data is a legitimate goal when its purpose is to understand issues that are themselves legitimate subjects of governmental concern or when it will contribute to future policymaking.

Fifth, CCSF argues, the differential treatment of landlord and tenant information – i.e., the redaction only of the latter – is neither arbitrary nor irrational because landlords and tenants are not similarly situated.  CCSF contends that the information collected from landlords concerns their business operation, whereas the tenant information pertains to the tenant's residence.  CCSF notes that information regarding ownership of real property is already a matter of public record through CCSF offices, and that information about land ownership is available online.  CCSF asserts that information about landlords helps

1    ameliorate the disparities in bargaining position between landlords and tenants, as

2    landlords may own multiple properties throughout the City, and tenants' bargaining

3    position is likely to be improved if they can query the database by landlord name, while

4    landlords will already have information about  tenants with whom they have entered into

5    buyout agreements.

6         Finally, with regard to the claim that the Ordinance makes the owner bear the

7    burden of any departure from the Ordinance's elaborate rules, CCSF contends that

8    because the Ordinance places certain obligations on landlords, there is nothing arbitrary

9    or irrational about making the landlord "bear the burden" when the landlord fails to satisfy

10   them.

11        In opposition, plaintiffs do not respond to CCSF's arguments regarding the

12   application of the rational basis standard to the specific equal protection claims asserted

13   in the complaint.

14        The court finds that the complaint fails to plead facts showing that landlords and

15   tenants are similarly situated with regard to the challenged provisions, but were treated

16   differently with no legitimate government purpose.  In particular, plaintiffs have

17   overlooked the threshold requirement that they allege facts showing that landlords and

18   tenants are in fact similarly situated for purposes of the challenged law.

19        The court agrees with CCSF that landlords and tenants are not similarly situated

20   with regard to bargaining position, with regard to restrictions on condominium

21   conversions, with regard to the purposes of the provision allowing tenants 45 days to

22   rescind a buyout agreement, and with regard to the release of identifying information.

23   Moreover, each of the challenged provisions is rationally related to a legitimate

24   government interest.

25        4.    Violation of right to privacy

26        Plaintiffs allege that the Ordinance violates the right to privacy under the California

27   Constitution by "making personal information about the landlord and his/her/its business

28   activities publically available without any legitimate purpose."  Cplt ¶ 17.

1    The Ordinance provides that certain information will be made publicly available at

2  the office of the San Francisco Rent Board.  This includes the landlord's "name, business

3  email address, and business telephone number;" the address of the rental unit that may

4  be the subject of buyout negotiations; the landlord's certification that the tenant was

5  provided with the required notice of rights; and the searchable database with information

6  from, and copies of, buyout agreements required to be filed with the Rent Board.

7    "[A]rticle I, section 1 of the California Constitution creates a right of action against

8  private as well as government entities."  Hill v. National Collegiate Athletic Assn., 7 Cal.

9  4th 1, 15-20 (1994).  "'The constitutional provision is self-executing; hence, it confers a

10  judicial right of action on all Californians.  Privacy is protected not merely against state

11  action; it is considered an inalienable right which may not be violated by anyone.'"  Id. at

12  18 (citations omitted).

13    To state a claim for violation of the right to privacy under the California

14  Constitution, a plaintiff must allege facts sufficient to show a legally protected privacy

15  interest, consisting of either "informational privacy" (an interest which precludes the

16  dissemination or misuse of sensitive and confidential information) or "autonomy privacy"

17  (an interest in making intimate personal decisions or conducting personal activities

18  without observation, intrusion, or interference); a reasonable expectation of privacy under

19  the circumstances; and conduct by the defendant constituting a "serious invasion" of

20  privacy such as constitutes "an egregious breach of the social norms underlying the

21  privacy right.  See id. at 35-37 (citing Cal. Const. art. 1, § 1).

22    CCSF argues that landlords have no legally protected privacy interest – let alone a

23  reasonable expectation of privacy – in the information required to be disclosed.  CCSF

24  contends that while privacy interests would warrant redaction of a tenant's identifying

25  information, landlords have no privacy interest in their names and business contact

26  information.  Moreover, CCSF argues, because ownership of property is a matter of

27  public record, a landlord has no basis to object to the association of his/her/its name with

28  the address of the property at issue.

United States District Court
Northern District of California

Similarly, CCSF asserts that landlords have no legally protected privacy interest or reasonable expectation of privacy in the certification that they have provided the tenants with the required notice of rights, or in the transactional information related to their buyout of a tenant, as this is not the type of private financial information that has been held to be protected by the right of privacy.  Moreover, CCSF argues, unlike in transactions with financial institutions, a landlord has no reasonable expectation of confidential treatment in any event, as tenants are free to disclose details of the transaction to anyone they choose.

In a further argument, CCSF contends that were there an invasion of privacy, plaintiffs would still not be able to prevail on this claim because the recording requirements substantively further countervailing interests.  CCSF argues that these privacy rights are not absolute, but rather are to be balanced against countervailing interests.

In opposition, plaintiffs assert that the Ordinance violates the landlords' constitutional right to privacy, because it requires the widespread public dissemination of "detailed, sensitive information about the landlords' private financial affairs."  By contrast, plaintiffs argue, the Ordinance protects the tenants' "comparable private financial information, by requiring that it be redacted."

In response to CCSF's suggestion that plaintiffs have no reasonable expectation of privacy in this information because most of it is already publicly available, plaintiffs assert that "the breadth of the information disclosed here goes far beyond anything that is otherwise made publicly available, or that considered in any of the cases cited by the City."  Specifically, they point to the fact that "entire buyout agreement, including all of the financial terms such as the amount of consideration agreed to," will be made publicly available.  They maintain that landlords "undoubtedly have a 'reasonable expectation' of privacy with respect to such sensitive details of their financial dealings."  For this reason, and because the information will be publicly disseminated, they contend that there is a "substantial invasion" of landlords' privacy interests.

Plaintiffs refer in general terms to "sensitive details of their financial dealings," but it appears beyond doubt that the only information they do not want disclosed is the actual amount offered and agreed to for a particular buyout.  The landlord's contact information and the address of the rental unit subject to the buyout negotiations are matters of public record.  The statement that the landlord provided each tenant with the disclosure form before commencing buyout negotiations does not implicate any personal information.

Plaintiffs offer no reason to conclude that the amount of the buyout is more sensitive or private than other information routinely submitted to the government and made publicly accessible.  Transactions involving the landlord-tenant relationship have long been subject to regulations requiring the landlords to submit similar kinds of information to governmental entities in records that are accessible to members of the public.  For  example, a landlord seeking to impose a rent increase in excess of the generally applicable limitations must file a petition with the Rent Board that includes (among other things) the landlord's name and contact information, the property address, information about proposed expenditures where applicable, and the current rent for each unit and the proposed increase.  S.F. Rent Board Forms 526, 528, 530, 531, and 532; S.F. Admin. Code §§ 37.7, 37.8; S.F. Residential Rent Stabilization and Arbitration Board Rules and Regulations, §§ 5.10, 5.11.  Landlords must disclose similar information when they seek to withdraw residential units from the rental market under the Ellis Act.  Rent Board Form 541; Cal. Gov't. Code § 7060.4; S.F. Admin. Code, § 37.9A(f).  Similar information is required in applications for condominium conversions, including detailed rental history and proposed sale prices.  S.F. Subd. Code, Art. 9, § 1381.

In short, plaintiffs have alleged no facts showing that landlords have a legally protected privacy interest or a reasonable expectation of privacy in the certification that they have provided the tenants with the required notice of rights, or in the transactional information related to their buyout of a tenant.  In particular, the amount paid by a landlord to buy out a tenant is not the type of private financial information that has been held to be protected by the right of privacy.  See e.g., People v. Blair, 25 Cal. 3d 640, 652

1   (1979) (credit card statements); <u>Burroughs v. Sup. Ct.</u>, 13 Cal. 3d 238, 243 (1974)

2   (banking records).  Moreover, unlike in transactions with financial institutions, a landlord

3   has no reasonable expectation of confidential treatment in any event, as tenants are free

4   to disclose details of the transaction to anyone they choose.

5      As for CCSF's second main argument, it is true that as an affirmative defense to a

6   claim of invasion of constitutional privacy rights, the defendant may show that "the

7   invasion is justified by a competing interest."  <u>Hill</u>, 7 Cal. 4th at 38-40.  However,

8   dismissal under Rule 12(b)(6) on the basis of an affirmative defense is proper only if the

9   defendant shows some obvious bar to securing relief on the face of the complaint.

10  <u>ASARCO, LLC v. Union Pacific R. Co.</u>, 765 F.3d 999, 1004 (9th Cir. 2014).

11     Here, CCSF argues that any invasion of privacy is justified because the

12  disclosures substantively further the City's legitimate countervailing interests.  CCSF's

13  argument asserts a defense rather than pleading defect.  An affirmative defense cannot

14  serve as a basis for dismissal unless it is obvious on the face of the complaint.  <u>Rivera v.</u>

15  <u>Peri & Sons Farms, Inc.</u>, 735 F.3d 892, 902 (9th Cir. 2013).  Here, the complaint alleges

16  no facts that can be read as supporting CCSF's asserted defense.

## CONCLUSION

18     In accordance with the foregoing, the motion for judgment on the pleadings as to

19  the first cause of action is GRANTED.  The second cause of action is also dismissed, on

20  the basis that injunctive relief is not a standalone cause of action in federal court.  The

21  third cause of action for declaratory relief is duplicative of the first cause of action, and is

22  also dismissed.  Because the court finds that amendment would be futile, the dismissal is

23  with prejudice.

25  **IT IS SO ORDERED.**

26  Dated:  November 5, 2015

_____

PHYLLIS J. HAMILTON
United States District Judge

United States District Court
Northern District of California